539 So.2d 132 (1989)
Norman GANGL
v.
STATE of Mississippi.
No. 58092.
Supreme Court of Mississippi.
February 9, 1989.
*133 John P. Price, Jones & Price, McComb, for appellant.
Mike Moore, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
SULLIVAN, Justice, for the Court:
The basic facts are undisputed. On August 3, 1986, at approximately 2:00 p.m., two male gunmen entered the Sav-On Drug Store in McComb, Mississippi. At gunpoint, the two men took roughly $978.00 in cash, and a pillowcase full of narcotic drugs. One of the gunmen had entered the store earlier in the day (about 10:30 a.m.), but proceeded in and out of the store without incident.
There were three employees present during the course of this armed robbery. Their testimony revealed that both gunmen were wearing jeans; one had on a red shirt and a cap, and the other wore a yellow shirt. All three employees also testified that Norman Gangl was not one of the two gunmen who entered the store at approximately 2:00 p.m. that day, nor was Gangl seen at any time prior to the robbery. In fact, Gangl was not seen until police officers spotted him driving an alleged getaway vehicle some 21 minutes after the Sav-On robbery.
In the course of the armed robbery, one of the gunmen requested keys to a blue Buick automobile parked out front, and belonging to employee Marilyn Reeves. Ms. Reeves expressed concern over her car, but acquiesced nonetheless in the request to turn over her keys. One of the gunmen assured Reeves not to worry because her car would "be a couple of blocks from here." Having secured their loot, the two gunmen left in Reeves blue Buick, and proceeded away from Sav-On Drugs onto Harrison Street.
Meanwhile, Berry Bean, the owner of a sewing center located three blocks from Sav-On, was on his way from his store to I-55, a route which brings him past Sav-On Drug Store. As Bean passed Sav-On, he noticed a man running from the front of *134 the store, wearing a yellow shirt and carrying "a sack of some type." Bean watched the man enter the passenger side of Reeves' blue Buick, and also noticed a man behind the wheel. Seeing Mr. East, the owner, and Tommy McKenzie, an employee, also running from Sav-On, caused him to circle around and back to the front of Sav-On. Finding no one there, he turned onto Harrison Street in search of Tommy McKenzie's truck, which he apparently expected to be in pursuit of a blue Buick.
Bean pulled over at Fred's Dollar Store. There he observed Reeves' blue Buick abandoned in the parking lot. His curiosity at a peak, Bean proceeded slowly across the parking area toward Delaware Street. Halfway across the lot, he noticed two men on the run between Fred's parking lot and Wendy's. One man wore jeans and no shirt, and carried a sack, while the other wore jeans and a red shirt. The man with the red shirt veered toward the rear of Wendy's. The man with the sack and no shirt headed straight to Delaware Street, across to the Exxon station, and directly to a white Chevrolet Monte Carlo parked at Exxon. The Monte Carlo was parked well away from the gas pumps, and this man went to the passenger side, looked back from where he came, and entered the car. Exxon is approximately one city block from Sav-On Drug Store. At this point, the Monte Carlo pulled out into Delaware Street at normal speed. Bean met the car head-on, and noticed two occupants. Bean at no time identified anyone as Norman Gangl.
Soon thereafter, a radio communique was dispatched to Officers Rushing and LeCour of the McComb Police Department. This communique advised them that a second robbery had occurred at Eckerd Drugs, and to be on the lookout for three white males in a white Chevrolet Monte Carlo with an Alabama license plate. Approximately 21 minutes after the Sav-On robbery, Officer Rushing spotted a white Monte Carlo with an Alabama tag being driven by Norman Gangl. Routine attempts to stop this vehicle proved unsuccessful, and a high speed chase ensued at speeds up to 115 miles per hour. Gangl finally managed to elude the pursuing officers by crossing the median and traveling south in the northbound lane of I-55. Gangl then left the interstate via the exit ramp connecting Highway 24 and I-55.
Minutes later, Officer Rushing observed smoke emanating from the bottom of the Highway 24 exit ramp embankment. Upon arriving there, Officer Glynnis informed he and LeCour that the white Monte Carlo had left the road. In a moment's glance, Officer Rushing saw a white male entering the woods. By this time, the area was secured, and a manhunt ensued for the driver of the white Monte Carlo.
Norman Gangl was apprehended approximately 1 1/2 hours later (around 4:00 to 4:30 p.m.). Gangl emerged from the woods with no shirt or shoes, scratched and generally dirty. No other suspects were found in the white Monte Carlo or with Gangl. The record does not indicate where and when the two primary participants were apprehended.
A contemporaneous search of the white Monte Carlo netted a handgun from the front seat area. The owner of Sav-On Drug Store testified that this gun was the "type" used by one of the robbers. A resulting inventory netted a variety of drugs strewn across the interior of the automobile. A red knit pullover shirt was also recovered from the interior of the car. Some drugs were found loose, some in their original containers, and still others in "a white pillowcase." These same drugs were later identified as having been taken in the robbery of Sav-On Drugs. The money taken in the robbery, along with another gun, was recovered from the west side of Fred's Dollar Store where a suspect had originally been seen escaping.
Norman Gangl was indicted by the Pike County Grand Jury on a charge of armed robbery. He was tried on March 20, 1986, in the Circuit Court of Pike County, Honorable Joe N. Pigott presiding, and following a jury verdict of guilty, was sentence to eighteen (18) years in the custody of the Mississippi Department of Corrections. The terms of the sentence require Gangl to *135 serve the first ten years, and the remaining eight years are to be suspended and Gangl placed on supervised probation.
Feeling aggrieved, Gangl has appealed to this Court assigning three errors, only one of which merits discussion.

I.

DID THE TRIAL JUDGE ERR IN REFUSING TO GRANT INSTRUCTION D-16A ON ACCESSORY AFTER THE FACT?
Gangl's theory of defense is that the proof showed, at the most, that he was only an accessory after the fact. In order to present this theory to the jury, Gangl sought to have the following instruction given to the jury:
JURY INSTRUCTION NO. D-16A
The Court instructs the jury that an accessory after the fact is one who conceals, receives, relieves, aids or assists any person, knowing that such person has committed a felony, with intent to enable such person to escape or avoid arrest, trial, conviction or punishment, after the commission of such felony.
The Court further instructs the jury that Norman Gangl is not required to establish that he was an accessory after the fact to your satisfaction, but if the evidence or lack of evidence in this case raises in the minds of the jury a reasonable doubt as to whether the Defendant was only an accessory after the fact, then, in that event, you must give him the benefit of the doubt and may not convict Norman Gangl of the crime of armed robbery, and therefore, it would be your sworn duty to return a verdict of not guilty.
The trial judge refused to grant the instruction because accessory after the fact is a separate offense to that laid in the indictment, relying on this Court's decision in Box v. State, 241 So.2d 158 (Miss. 1970), cited in Wilcher v. State, 455 So.2d 727 (Miss. 1984). In refusing the instruction, the trial judge acknowledged that the question for the jury to determine is whether Gangl is an accessory before the fact or an accessory after the fact; however, he felt bound by Box, supra, and Wilcher, supra, to refuse the instruction since accessory after the fact is not a lesser included offense of robbery. Obviously, the State concurs in this view. Thus, Gangl was prevented from instructing the jury on his theory of defense because of the court's obedience to the formalistic distinction between what is a lesser included offense (and consequently punishable on an indictment charging the greater offense), and a separate and distinct offense (consequently not punishable unless charged in the indictment).
Paying obedience to form over substance misses the point. The facts adduced at trial, and acknowledged by the trial judge, suggest that Gangl may have been guilty of two possible courses of criminal conduct; accessory before the fact to armed robbery, or accessory after the fact to armed robbery. The jury, therefore, may reasonably have found Gangl guilty of accessory after the fact only, without any inconsistency in evidentiary or ultimate fact. It is important to note here that no evidence, direct or circumstantial, implicated Gangl as a primary participant in the armed robbery. Instead, he was tried and convicted circumstantially on the theory that he was an accessory before the fact to the armed robbery of Sav-On Drug Store.
The essence of Gangl's argument then is that there is no proof which connects him with any event prior to or contemporaneous with the robbery of Sav-On Drugs. Instead, Gangl contends that all proof relates to matters subsequent to the criminal event, and show at the most that he was an accessory after the fact. Specifically, Gangl alleges the following deficiencies in proof:
(1) Gangl was never seen by any one until at least 21 minutes after completion of the robbery;
(2) There was no proof establishing any relationship between Gangl and the actual perpetrators prior to the criminal event;
(3) There was no proof that Gangl was seen with either of the two perpetrators before the criminal event, and neither *136 perpetrator was with Gangl at the time of his arrest; and
(4) The only proof was that Gangl possibly aided in the escape of at least one of the perpetrators after the felony was completed because he was the driver of a car suspected of being a getaway vehicle.
In the State's behalf, the proof supports a reasonable inference that the primary participants had a pre-arranged plan with Gangl for him to be the driver of a getaway vehicle. There was uncontradicted evidence that fruits of the crime were recovered from the white Monte Carlo being driven by Gangl. A red knit pullover shirt was recovered from the car, and one of the actual perpetrators was identified as having worn a red shirt. The owner of Sav-On testified that this red shirt looked like the "type" shirt being worn by one of the perpetrators. Also, there was the uncontradicted testimony of Marilyn Reeves that one of the perpetrators stated that her car would be left a couple of blocks away from Sav-On. Notwithstanding, there was an adequate evidentiary basis in the record for Gangl's requested instruction, and the instruction should have been granted.
The elements of accessory after the fact are that (1) a completed felony has been committed; (2) the accused concealed, received, relieved, aided, or assisted a felon, knowing that such person had committed a felony; and (3) such assistance or aid was rendered with the intent to enable such felon to escape or avoid arrest, trial, conviction, or punishment after the commission of such felony. Mississippi Code Annotated, § 97-1-5 (1972); Buckley v. State, 511 So.2d 1354, 1358 (Miss. 1987). One of the critical distinctions between being an accessory before and after the fact is whether the felony is complete at the time assistance is rendered. One is an accessory before the fact when assistance is rendered the principal before the felony is completed in order to help said principal in commission or completion of the offense. Crosby v. State, 179 Miss. 149, 159-60, 175 So. 180 (1937) (Emphasis added). Logically, this would include entering into a pre-arranged plan for escape of the principals. An accessory before the fact necessarily "participates in the design of the felony." Malone v. State, 486 So.2d 360, 364 (Miss. 1986). In contradistinction, an accessory after the fact is a person assisting one who has completed the commission of a felony to avoid being apprehended, arrested, convicted, etc. Crosby, supra. (Emphasis added).
When these substantive rules are applied to the evidence adduced at trial, the evidentiary basis for Gangl's requested instruction becomes apparent. Had the instruction been granted, a serious doubt may have arisen in the minds of the jurors as to whether Gangl's apparent assistance to at least one of the perpetrators was the product of pre-design, or was simply the product of after the fact circumstance.
The better rule in cases such as this is that the defendant may request an instruction regarding any offense carrying a lesser punishment if the lesser offense arises out of a nucleus of operative fact common with the factual scenario giving rise to the charge laid in the indictment. See Griffin v. State, 533 So.2d 444, 447-48 (Miss. 1988).
Of course, lesser offense instructions should not be granted indiscriminately, and only where there is an evidentiary basis in the record. Harper v. State, 478 So.2d 1017, 1021 (Miss. 1985); Lee v. State, 469 So.2d 1225, 1230 (Miss. 1985). The evidentiary standard is the same as for lesser included offense instructions, and is laid out in Harper v. State, supra, at 1021. Consequently, where as in the instant case, the evidence warrants it, the accused is entitled as a matter of right, upon proper request, to a lesser offense instruction the same as he would be entitled to a lesser included offense instruction. Griffin v. State, supra.
The concern here that the indictment on a charge of armed robbery will not support a conviction for accessory after the fact, that being a separate and distinct offense, is moot. By requesting the instruction, Gangl waives any inadequacy or notice in the indictment. See Griffin v. State, supra, *137 at 448, note 2. Thus, the jury on retrial may convict him of accessory after the fact even though that crime is not a lesser included offense of the charge laid in the indictment, and the State may request that the instruction be reformed to so read. See Harper v. State, 478 So.2d at 1018.
The State makes the added argument that Instruction D-16A is confusing. The trial judge agreed in refusing this instruction. However, the trial judge has the power and the responsibility to reform and correct a proffered instruction, or to direct the parties to correct any deficiency, where, under the evidence, the party is entitled to the instruction. Id. Although we find no confusion in the instruction, the principle announced in Harper disposes of the State's claim, and on remand, any perceived confusion may and should be corrected.
Finally, we note that in Wilcher v. State, 455 So.2d 727 (Miss. 1984), and in Johnson v. State, 477 So.2d 196 (Miss. 1985), accessory after the fact instructions were refused partly because accessory after the fact is a distinct crime for which a person cannot be punished unless indicted. However, our review of those cases convinces us that there was no evidentiary basis for such an instruction. Also, the majority in Wilcher felt satisfied that the jury was otherwise adequately instructed. Therefore, the present case is distinguishable and not inconsistent with either Box, supra, Wilcher, supra, or Johnson, supra.
Therefore, because the facts and proof suggest that the jury may, if properly instructed, have reasonably found Gangl guilty of the lesser offense of accessory after the fact, but not guilty of being an accessory before the fact to the armed robbery of Sav-On Drugs, we hold that the Circuit Court erred in refusing his proffered Instruction D-16A. Norman Gangl's conviction in this cause is hereby reversed and the case remanded to the Circuit Court of Pike County for a new trial consistent with this opinion.
CONVICTION OF ARMED ROBBERY AND TO SERVE A SENTENCE OF EIGHTEEN (18) YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS HEREBY REVERSED. THIS CAUSE IS REMANDED TO THE CIRCUIT COURT OF PIKE COUNTY, MISSISSIPPI, FOR A NEW TRIAL CONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON and ZUCCARO, JJ., concur.
HAWKINS, P.J., and ZUCCARO, J., specially concur.
PITTMAN, J., not participating.
HAWKINS, Presiding Justice, specially concurring:
I concur in reversing this case. In my view this is not a case of whether or not an accessory after the fact is a lesser included offense of armed robbery clearly it is not, and any discussion of the law as to lesser included offense instructions is irrelevant.
The basic question in this case is whether a defendant, when the evidence supports it, is entitled to an instruction telling the jury that although they may believe beyond a reasonable doubt that he is guilty of a crime separate and distinct from the one with which he is charged, they should nevertheless acquit him of the one for which he is indicted. Also, that the mere fact that they believe beyond a reasonable doubt that he is guilty of a separate and distinct crime does not warrant their finding him guilty of the crime for which he was indicted, and for which they should return a verdict of not guilty. Crosby v. State, 179 Miss. 149, 162, 175 So. 180, 182 (Miss. 1937).
In this case Gangl was clearly entitled to such an instruction. The one he requested arguably is somewhat confusing, but the circuit judge should have permitted defense counsel to reform it to clarify the issue before the jury. I do not read Wilcher v. State, 455 So.2d 727, 734 (Miss. 1984), as contrary to this view. In that case we held that the issue covered by the requested instruction had been properly covered by *138 other instructions granted by the circuit court.
Nor, in my view, is a defendant by such requested instruction waiving his right either to have been, or to be properly indicted. The State chose the charge under which he is being tried; they should live with it.
ZUCCARO, J., joins this opinion.