**IN THE SUPREME COURT OF MISSISSIPPI**
**NO. 98-KA-00224-SCT**

*TED MANGUM a/k/a*

*TED MANGUM, III*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/16/1997 |
| TRIAL JUDGE: | HON. ROBERT LEWIS GIBBS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM F. VICK |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/29/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/20/2000 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Ted Mangum was tried and convicted of capital murder in the Circuit Court of the First Judicial District of Hinds County, Mississippi. After he was sentenced on December 16, 1997, to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections, he perfected a timely appeal. Finding no reversible error, we affirm.

## STATEMENT OF THE FACTS

¶2. On or about May 23, 1996, John Turner, an operator of Sandy's Package Store, was shot and killed. The package store is located at the corner of South West and Gallatin Streets in the City of Jackson in the First Judicial District of Hinds County, Mississippi. The package store fronts South West Street and is physically connected to a Texaco service station which fronts Gallatin Street.

¶3. At approximately 8:30 p.m. on the date of the murder, Ralph Shows was driving in a southwesterly direction on South West Street toward Gallatin Street on his way home from work. As he approached Gallatin Street, he observed a black male running in a northeasterly direction on South West Street, carrying a pistol in his right hand, and attempting to stuff it down his pants. After passing the individual, Shows made a u-turn and observed the male get into the passenger side of a green Chevrolet pick-up truck which was parked and headed in a southwesterly direction on South West Street. Shows then observed the green truck make a u-turn to proceed in a northerly direction on South West Street and then make a left turn was made onto Julienne Street. Suspecting foul play, Shows went to the package store and found the storekeeper had been shot and was apparently dead. Shortly thereafter, Shows accompanied an investigator from the Jackson Police Department to Julienne Street where he identified the green Chevrolet truck which he saw the gunman enter. Shows could not identify either the gunman or the driver of the truck.

¶4. Willie Taylor, an attendant at the Texaco service station, recalled seeing a green Chevrolet truck occupied by three males repeatedly circling the service station and package store earlier on the date of the incident. Taylor also remembered one of the males coming into the service station the day before the shooting. At approximately 8:30 p.m. on the night of the incident, Taylor heard two gunshots ring out and observed a male running away from the package store. Taylor then walked to the package store and saw Turner leaning against the door over a pool of blood. Taylor could not identify the males he saw in the truck or the male he saw running from the package store.

¶5. Several officers arrived at the scene and began investigating and collecting evidence. Officer Charles Taylor found a fired projectile lying on the floor of the package store and recovered from the green truck a nine millimeter fired cartridge, a white mask and a red Nike cap. Taylor also recovered from a plastic bug shield located on the hood of the truck a partial palm print, which was later identified as belonging to Christopher Hobson, also charged with capital murder in this case.

¶6. Dr. Rodrigo Galvez, a board certified pathologist, performed an autopsy on Turner's body and found that a bullet had penetrated his lungs and pulmonary artery, causing Turner to bleed to death. Dr. Galvez testified that the bullet that struck Turner had been fired at a distance greater than 18 inches. Therefore, Dr. Galvez ruled out suicide as the cause of Turner's death.

¶7. Ricky Bracey and Christopher Hobson turned themselves in to the police within a few days of the murder, giving pre-trial statements about their involvement in the crime.

¶8. Bracey, who pled guilty to manslaughter and armed robbery in connection with this incident, testified as follows: Bracey, Hobson and Mangum planned the armed robbery. The three of them were playing basketball earlier on the date of the incident when they began to discuss robbing a liquor store. Mangum picked out Sandy's Package Store as the target. Mangum's role was to be the "getaway" driver. When Bracey and Hobson went into the package store, Bracey pulled a gun on Turner. Bracey and Turner began struggling for the gun, and it fired, striking Turner. Bracey and Hobson then ran from the store without taking any money. Bracey ran toward and got into the green truck Mangum was sitting in on South West Street. Hobson ran in the opposite direction. Mangum drove the truck to Julienne Street where they abandoned it.

¶9. Hobson, called by the defense, testified as follows: He recalled giving a statement to the police on May 27, 1996, stating that Bracey had initiated a conversation about robbing Sandy's Package Store. Hobson and Bracey were to go inside the package store, commit the robbery, and return to a nearby neighborhood

where Mangum would be waiting for them. Hobson also gave a statement to the police on November 4, 1997, stating that they had prearranged for Mangum to drive the getaway car. Hobson, Bracey, and Mangum discussed how they were to commit the robbery, which store to rob, and how they were going to share the money. Hobson did not return to the green truck after running out of the package store, but instead went elsewhere. A friend had loaned him the truck.

## STATEMENT OF THE ISSUES

¶10. On appeal Mangum raises the following assignments of error:

**I. WAS THE JURY'S VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?**

**II. DID THE TRIAL COURT ERR IN REFUSING TO GRANT INSTRUCTION D-9 ON ACCESSORY AFTER THE FACT?**

**III. DID THE TRIAL COURT ERR IN GRANTING INSTRUCTION S-1A ON AIDING AND ABETTING?**

**IV. DID THE TRIAL COURT ERR IN REFUSING TO GRANT INSTRUCTION D-7, A TWO-THEORY INSTRUCTION?**

**V. DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE PHOTOGRAPHS OF THE VICTIM AND CRIME SCENE?**

**VI. WAS MANGUM'S SENTENCE DISPROPORTIONATE AND THEREFORE CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION?**

## DISCUSSION

**I. WAS THE JURY'S VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?**

¶11. The State is required to prove every element of the offense charged beyond a reasonable doubt. *Heidel v. State*, 597 So. 2d 835, 843 (Miss. 1991). This Court's stringent standard of appellate review for challenges to the legal sufficiency of the evidence was articulated in *Garrett v. State*, 549 So. 2d 1325, 1331 (Miss. 1989) (quoting *McFee v. State*, 511 So. 2d 130, 133-34 (Miss. 1987)):

When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence-not just that supporting the case for the prosecution-in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgment might have

reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.

(citations omitted).

¶12. We further stated in ***Mason v. State***, 429 So. 2d 569, 572 (Miss. 1983) (quoting ***Young v. State***, 425 So. 2d 1022, 1024 (Miss. 1983)),

> *Only slight corroboration of an accomplice's testimony is require to sustain a conviction.* ***Feranda v. State***, 267 So. 2d 305 (Miss. 1972). The testimony of Harrison and Dorman was corroborated to some extent by Easterling and Patricia Thrasher. *The credibility and reasonableness of the testimony of Harrison and Dorman was for the determination of the jury.* ***Cochran v. State***, 278 So. 2d 451 (Miss. 1973). It is within the province of the jury to accept parts of the testimony of any witness, and the jury may give consideration to all inferences flowing from the testimony. ***Grooms v. State***, 357 So. 2d 292 (Miss. 1978).

(emphasis added).

¶13. As to the weight of the evidence, this Court will order a new trial "[o]nly where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice . . . ." ***Herring v. State***, 691 So. 2d 948, 957 (Miss. 1997).

¶14. Although there is uncontradicted testimony that Mangum did not enter the package store, Bracey testified that Mangum participated in planning the armed robbery. According to Bracey, it was Mangum who specifically picked Sandy's Package Store as the target. Bracey testified that Mangum was to drive the getaway car. Bracey further testified that it was indeed Mangum who drove him away from the scene of the crime. Hobson testified that all three of them discussed how they were to commit the robbery, which store to rob, and how they would share the money. Hobson further testified that he did not return to the truck, but instead went elsewhere. The testimony of the accomplices was corroborated to some extent by Shows and Taylor. Shows saw a black male carrying a pistol run toward and get in the passenger side of a green truck driven by another male. Taylor saw three males in a green truck constantly circling the package store on the day of the crime.

¶15. Although there exists some discrepancies between the accomplices' pre-trial statements and their testimony, they consistently implicated Mangum in the planning of the crime. Moreover, the jury was instructed to view the accomplices' testimony with great suspicion and distrust. The evidence, when viewed in the light most favorable to the State, supports the jury's verdict. ***Garrett v. State***, 549 So. 2d at1331. Therefore, this issue is without merit.

### II. DID THE TRIAL COURT ERR IN REFUSING TO GRANT INSTRUCTION D-9 ON ACCESSORY AFTER THE FACT?

¶16. Mangum argues that the trial court erred in denying him an accessory after the fact instruction. The elements of accessory after the fact are that (1) a completed felony has been committed; (2) the accused concealed, received, relieved, aided or assisted a felon, knowing that such person had committed a felony; and (3) such assistance or aid was rendered with the intent to enable such felon to escape or avoid arrest, trial, conviction or punishment after the commission of such felony. Miss. Code Ann. § 97-1-5 (1999). "One cannot be both a principal in the crime and an accessory after the fact." ***Hoops v. State***, 681 So. 2d 521, 534 (Miss. 1996) (citations omitted).

¶17. As stated above, Bracey and Hobson both testified that Mangum took part in designing the attempted robbery and escape, and Bracey's testimony placed Mangum as the "getaway" driver. Their testimony was corroborated to some extent by Taylor and Shows. However, in his defense, Mangum took the stand and denied having any involvement in the crime. According to Mangum, he was present when Bracey and Hobson planned the attempted robbery but told them that he "didn't want any part of that." Mangum testified that after Bracey and Hobson attempted the robbery, Bracey came to a nearby basketball court where Mangum was playing basketball and informed Mangum that the package store operator had been shot in the course of the crime. Mangum testified that after he learned of the shooting, he left the scene without assisting anyone:

> (Direct examination of Ted Mangum)
>
> BY MR. DUGGAN [Mangum's attorney]:
>
> Q. Ricky told you he shot the man and ran; is that correct?
>
> A. That's what he said.
>
> Q. After he told you that, what, if anything, did you do?
>
> A. I left. I didn't want any part of it.

By Mangum's own testimony, he did nothing to assist or intentionally conceal Bracey or Hobson from arrest after the attempted robbery had been completed.

¶18. All of the testimony which implicates Mangum as the "getaway" driver also implicates him as a principal in the crime. Both Bracey and Hobson testified that driving the "getaway" vehicle was Mangum's designated role. In fact, being a "getaway" driver clearly necessitates prior planning and involvement in advance of the crime by such driver. The only testimony otherwise was Mangum's own in which he claimed that he was never involved in planning any crime and that he never assisted either Hobson or Bracey afterwards in any way. "[L]esser offense instructions should not be granted indiscriminately, and only where there is an evidentiary basis in the record." *Gangl v. State*, 539 So. 2d 132, 136 (Miss. 1989). The trial court did not err in refusing the requested instruction on accessory after the fact, as there was no adequate evidentiary basis in the record for such instruction. Thus, this issue is without merit.

### III. DID THE TRIAL COURT ERR IN GRANTING THE INSTRUCTION S-1A ON AIDING AND ABETTING?

¶19. Mangum argues that the instruction on aiding and abetting was erroneous because it did not instruct the jury that Mangum had to be present, consenting, and encouraging on each and every element of the crime. This, in his view, led to confusion between what was needed for being an aider and abettor as opposed to being merely an accessory after the fact. The jury instruction read as follows:

> The Court instructs the jury that it is not necessary that a party should be actually physically present at a criminal transaction in order to make him guilty as an accessory; he is, in the eyes of the law, present, aiding and abetting if, with the intention of giving assistance in the commission of the crime, he is near enough to render assistance should the occasion arise.

Thus, in this case, if you believe from the evidence in this case beyond a reasonable doubt that at the time of the crime in question, the defendant, Ted Mangum, after discussing and planning the commission of the crime with his accomplice, waited nearby for the purpose of transporting his accomplice away from the scene of the crime, although he, himself was not actually physically present at the crime, such conduct and presence is sufficient to make him guilty as a principal.

¶20. In *Berry v. State*, 728 So. 2d 568, 570-71 (Miss. 1999), we held that the granting of a *Hornburger*-type instruction, *Hornburger v. State*, 650 So. 2d 510, 514-15 (Miss. 1995), constituted reversible error. That aiding and abetting instruction erroneously allowed a jury to find the accused guilty as a principal if found "doing any act which is an element of the crime." In the case at bar, that offensive language is absent. The instruction here allowed the jury to find Mangum guilty as a principal if, after planning the attempted robbery, he purposefully waited nearby to transport his accomplices away from the scene of the crime. That instruction, along with instruction S-3 which outlines all the necessary elements the State had to prove, appropriately fits the facts of this case. *See* Miss. Code Ann. § 97-3-19(2)(e) (1999). This assignment of error is without merit.

### IV. DID THE TRIAL COURT ERR IN REFUSING TO GRANT INSTRUCTION D-7, A "TWO-THEORY" INSTRUCTION?

¶21. Mangum next argues that the trial court should have granted him a "two-theory" instruction applicable to cases based on circumstantial evidence. This Court has held that "[t]he rule in Mississippi is that a circumstantial evidence instruction should be given only when the prosecutor can produce neither eyewitnesses or a confession to the offense charged." *Stringfellow v. State*, 595 So. 2d 1320, 1322 (Miss. 1992). It is apparent that the present case is not based solely on circumstantial evidence, given both accomplices' testimony. This assignment of error is without merit.

### V. DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE PHOTOGRAPHS OF THE VICTIM AND CRIME SCENE?

¶22. It is well settled in this State that the admissibility of photographs rests within the sound discretion of the trial judge. *Westbrook v. State*, 658 So. 2d 847, 849 (Miss. 1995) (citing *Griffin v. State*, 557 So. 2d 542 (Miss. 1990)); *see also Mackbee v. State*, 575 So. 2d 16, 31 (Miss. 1990); *Boyd v. State*, 523 So. 2d 1037, 1039 (Miss. 1988). Photographs that are gruesome or inflammatory or that lack an evidentiary purpose are inadmissible as evidence. *McNeal v. State*, 551 So. 2d 151, 159 (Miss. 1989). The discretion of the trial judge "runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value." *Westbrook,* 658 So. 2d at 849 (quoting *Hart v. State*, 637 So. 2d 1329, 1335 (Miss. 1994) (citations omitted)).

¶23. In his brief, Mangum makes only general allegations that the photographs have no probative value. Mangum offers no evidence or supporting proof to show that he was prejudiced in any manner by the admission of the photographs.

¶24. In *Alford v. State*, 508 So. 2d 1039, 1041 (Miss. 1987), this Court stated, "[t]he decision to admit photographs depicting the crime scene are within the trial court's discretion." (citations omitted). In *Brown v. State*, 690 So. 2d 276, 289 (Miss. 1996), this Court stated:

In *Westbrook v. State*, 658 So. 2d 847, 849 (Miss. 1995), this Court found that photographs of a

victim have evidentiary value when they aid in describing the circumstances of the killing, ***Williams v. State***, 354 So. 2d 266 (Miss. 1978); describe the location of the body and cause of death, ***Ashley v. State***, 423 So. 2d 1311 (Miss. 1982); or supplement or clarify witness testimony, ***Hughes v. State***, 401 So. 2d 1100 (Miss. 1981).

¶25. In the case at bar, the trial judge admitted into evidence Exhibit 8 which depicts the interior of the package store and Exhibit 9 which depicts the victim lying in a pool of blood. The judge found the photographs to be more probative than prejudicial, stating that Exhibit 8 was relevant to show the crime scene and Exhibit 9 was the only photograph of the deceased victim. Under the standard set forth in ***Alford*** and ***[Brown](#)***, the photographs were properly admitted into evidence. As such, this assignment of error is without merit.

### VI. WAS MANGUM'S SENTENCE DISPROPORTIONATE AND THEREFORE CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION?

¶26. In his final assignment of error, Mangum argues that because he had no intent to commit the armed robbery and murder Turner, his sentence to life imprisonment is cruel and unusual punishment, especially where an accomplice pled guilty to manslaughter and armed robbery and received a lighter sentence.

¶27. The prosecutor acted within his discretion to accept a plea by Bracey. Undoubtedly, this resulted in Bracey receiving less time to serve. Mangum chose not to plead guilty and was subsequently convicted of capital murder by a jury of his peers. The trial court sentenced Mangum to life imprisonment. Miss. Code Ann. § 99-19-101 (1994), provides in part:

> Upon conviction or adjudication of guilty of a defendant of capital murder, or other capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death, life imprisonment without eligibility for parole, or life imprisonment.

Pursuant to this legislative mandate, Mangum received the lightest sentence the trial court could have given him. This assignment of error is without merit.

### CONCLUSION

¶28. For the foregoing reasons, Mangum's conviction of capital murder and sentence to life imprisonment in the custody of the Mississippi Department of Corrections and the judgment of the Circuit Court of the First Judicial District of Hinds County are affirmed.

¶29. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PITTMAN, P.J., SMITH, MILLS, COBB AND DIAZ, JJ., CONCUR. BANKS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, C.J., AND McRAE, J.**

**BANKS, PRESIDING JUSTICE, DISSENTING:**

¶30. In my view, the defendant was entitled to an instruction allowing the jury to conclude that he was guilty of no more than accessory after the fact. Because he was denied that instruction, I would reverse and remand for a new trial.

¶31. The majority overlooks this Court's holding in *Gangl v. State*, 539 So. 2d 132, 136 (Miss. 1989). The circuit court erred in concluding that an offense must be strictly a lesser included offense of the offense in the indictment in order to warrant a jury instruction on accessory after the fact. We have held that the offense need only be related for an instruction on a lesser offense. *Gangl,* 539 So. 2d at 136. "The better rule in cases such as this is that the defendant may request an instruction regarding any offense carrying a lesser punishment if the lesser offense arises out of a nucleus of operative fact common with the factual scenario giving rise to the charge laid in the indictment." *Id.* As a matter of right, upon proper request, the defendant is entitled to a lesser offense instruction the same as he would be entitled to a lesser-included-offense instruction when there is evidence warranting such instruction. *Griffin v. State*, 533 So. 2d 444, 447-48 (Miss. 1988). There is such evidence here.

¶32. Here, Mangum consistently testified that he did not want anything do with the crime. However, Mangum testified that, after the robbery, Rick Bracey informed him that Bracey went into the store and the man was shot. After receiving this knowledge of the committed crime, Mangum testified that he left. That, however, is all that he said about the matter. He did *not* as the majority suggests, deny "assisting " anyone. Whether he assisted anyone in fact is a jury question, regardless of whether he denied any act of assistance. The majority, however, leaps to an unwarranted conclusion when it interprets his testimony as denying assisting anyone. The fact is that driving away with Bracey could be interpreted as assistance. Mangum did not say that he left the scene alone. He did not deny that he drove the truck away, nor did he deny that Bracey was in the truck when he drove it away. One simply can not get all of these denials from the simple statement that "I left" as the majority does.

¶33. While the assertion by the majority that Mangum does not admit giving any assistance whatever may give it some comfort, that comfort is unwarranted, for an admission by Bracey does nothing for the application of the legal principle here involved. That legal principle is simply that a lesser offense instruction would be given where there is evidence which would allow a fair-minded jury to find that the offense occurred. *Ruffin v. State*, 444 So. 2d 839, 840 (Miss.1984). The evidence in support of a lesser related instruction need not come from the mouth of the accused. *Perry v. State*, 637 So. 2d 871, 877 (Miss. 1994).

¶34. Here, other testimony from Ricky Bracey and Ralf Shows suggests that Mangum drove off with Bracey in the truck. If the jury believes that Mangum had no prior involvement but gained knowledge of the Bracey's acts after the fact, and then drove off with Bracey, then the jury could conclude that Mangum was guilty of being an accessory after the fact. He was entitled to an instruction permitting this finding. *Gangl,* 539 So. 2d at 136.

¶35. There is testimony here from both Bracy, an alleged accomplice, and an independent witness that Bracy got into the truck. While Bracy also says that Mangum was in on the planning of the robbery, the jury was free to reject that part of his testimony and accept the other. *Warren v. State*, 709 So. 2d 415, 420 (Miss. 1998). This is especially so where the latter portion is corroborated by an independent witness.

> The jury has the right to believe a part of the witnesses' testimony and disbelieve other parts, and arrive at the truth as to what transpired. *Bond v. State*, 162 So. 2d 510 (Miss. 1964); *Matthews v.*

*State*, 243 Miss. 568, 139 So. 2d 386 (1962); ***Cobb v. State***, 235 Miss. 57, 108 So. 2d 719 (1959); ***Ivey v. State***, 206 Miss. 734, 40 So. 2d 609 (1949). *Cf. also* ***Rogers v. State***, 222 Miss. 609, 76 So. 2d 702 (1955); ***Scott v. State***, 185 Miss. 454, 188 So. 546 (1939); ***Woodward v. State***, 180 Miss. 571, 177 So. 531 (1937), *sugg. of error* 178 So. 469 (1938); ***Witt v. State***, 159 Miss. 478, 132 So. 338 (1931); ***Evans v. State***, 159 Miss. 561, 132 So. 563 (1931); and ***Young v. State***, 150 Miss. 787, 117 So. 119 (1928).

***Alexander v. State***, 251 Miss. 847, 855, 171 So. 2d 517, 520 (1965). "We have repeatedly held that in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others, and that they may accept in part and reject in part the evidence on behalf of the state or on behalf of the accused. In other words, the credibility of witnesses is not for the reviewing court." *[Watson v. State](#)***,** 722 So. 2d 475, 479 (Miss. 1998) (quoting ***Gathright v. State***, 380 So. 2d 1276, 1278 (Miss.1980)).

¶36. Neither is the fact that Mangum's version of events, if believed entirely, would exculpate him from guilt altogether. Like any other witness, the jury is free to believe a part and disbelieve a part of a defendant's testimony. In ***Perry v. State***, we held that the defendant's theory that he had no possession of the marijuana did not deprive him of the right to an instruction that he was guilty of only simple possession as opposed to possession with the intent to distribute, if the evidence would support a jury conclusion to that effect. ***Perry v. State***, 637 So.2d at 877. We noted that the jury was free to disregard Perry's denial of knowledge of the marijuana, but also free to disregard his alleged accomplice's testimony that the marijuana was for sale by Perry. ***Id.***

¶37. Similarly, here, the jury could disregard parts of the accomplices' testimony and believe Mangum's testimony that he was not a principal in the robbery. This is especially so in light of the well-known admonition that accomplice testimony should be viewed with great caution and suspicion. ***Derden v. State***, 522 So. 2d 752, 754 (Miss. 1988); ***Winters v. State***, 449 So. 2d 766, 771 (Miss. 1984); ***Simpson v. State***, 366 So. 2d 1085, 1086 (Miss. 1979); ***Thomas v. State***, 340 So. 2d 1, 2 (Miss. 1976). Indeed, such an accomplice testimony instruction was properly given in this case.

¶38. The evidence here warrants an instruction for accessory after the fact. Because the circuit court did not instruct the jury to that effect, I respectfully dissent from the majority opinion.

**PRATHER, C.J., AND McRAE, J., JOIN THIS OPINION.**