GRAVES, Presiding Justice,
Dissenting:
¶ 39. Carteze Brazzle was convicted of one count of carjacking and one count of kidnapping after a jury trial in Hinds County Circuit Court. The trial court sen *819 tenced him to consecutive prison sentences of fifteen years for carjacking and thirty years for kidnapping. By affirming Braz-zle’s conviction despite the trial court’s failure to properly instruct the jury, the majority misapplies the relevant principles of law and greatly impairs the rights of criminal defendants in Mississippi. Therefore, I respectfully dissent.
I.
¶ 40. Brazzle’s conviction arises out of a series of events that occurred on January 22, 2007. The facts are disputed. During the trial, the jury heard testimony from the victim, three police officers, and Braz-zle.

Camillia Wright’s Testimony

¶ 41. Wright testified that, on January 22, 2007, around 11 a.m., she was at a Popeye’s restaurant on Highway 80 in Jackson, Mississippi. She stated that she was in the “drive-thru” lane and observed a man outside the restaurant. According to Wright, as she was about to pay for her food, this man approached the driver’s side window of her car, pulled out a gun, and told her to get out of her car. Wright testified that she was driving a red Tahoe. She stated that the man then pushed her over to the passenger side and got into her car. She also stated that she asked to get out of the car, but the man would not let her and drove onto Highway 80. Wright claimed that she was able to observe the man’s face before he threatened to shoot her if she continued to look at him. Wright stated that the man let her jump out of the car near the ramp to Highway 220. According to her testimony, a man who had witnessed her jumping out of the car pulled over and allowed her to use his cell phone to call the police. Wright also testified that a police officer, who was passing by on patrol, stopped to assist her.
¶ 42. Wright stated that, after she had been taken to the police station, she gave the police the following description of the man who stole the car: five-foot-six, short, chubby, dark-skinned, with nappy hair, and wearing a black jacket. She also stated that she was asked to view a photographic lineup and that she identified Brazzle as the man who stole the car.

Officer Gregory Jackson’s Testimony

¶43. Officer Jackson testified that on January 22, 2007, he was on patrol driving down Highway 80 when he observed Wright at the 1-220 ramp. He testified that he pulled over, that Wright told him her car had been stolen, and that she gave him a description of the car (a red Tahoe) and told him the direction in which the man had driven. He also stated that Wright told him that the man was a black male, short, and wearing a black jacket. Officer Jackson testified that he drove with Wright to assist other officers who were setting up a perimeter to apprehend the man. According to Officer Jackson, he recovered a jacket from the scene and then took Wright to the police station. Officer Corliss Harris’ Testimony
¶ 44. Officer Harris testified that he was on patrol in the vicinity of the Popeye’s restaurant when he was informed of an incident at Popeye’s involving a burgundy Tahoe. Officer Harris stated that he proceeded to the restaurant, where unidentified individuals told him that the car was heading west on Highway 80. He testified that he saw a burgundy Tahoe and eventually caught up with it. He stated that he turned his lights off so that he would not “spook” the driver of the Tahoe until backup officers had arrived. Officer Harris testified that he and the driver of the Tahoe were stopped at a railroad crossing and that, when the train had almost passed, he learned that backup officers were seconds away, so he turned his *820 lights back on to prevent a car chase. According to Officer Harris, once he turned his lights back on, the driver of the Tahoe attempted to drive off the road, but the car became stuck in the muddy embankment. Officer Harris testified that the driver then got out of the car and ran toward the nearby woods. Officer Harris also stated that Officer Jackson recovered a black jacket from the woods.

Officer Reginald Cooper’s Testimony

¶ 45. Officer Cooper testified that, on January 22, 2007, he spoke with Wright. He stated that Wright told him that the man who stole her car was five-foot-six or five-foot-seven, dark-skinned, chubby, and had nappy hair. He also testified that he showed Wright a photographic lineup. According to Officer Cooper, he also interviewed Brazzle, who gave two statements. Officer Cooper testified that he had possession of a black jacket, which Brazzle admitted belonged to him.
¶ 46. Officer Cooper stated that, as a part of his investigation, he spoke with a man named Elliott Turner on the telephone, although the contents of that discussion are not revealed in the record. Officer Cooper also admitted that Officer Harris had observed a green Buick following the Tahoe before the driver of the Tahoe was apprehended, and that the presence of this vehicle had been noted in the police report.

Carteze Brazzle’s Testimony

¶ 47. Brazzle testified that, on January 22, 2007, his friend Elliott Turner asked him to accompany him to pick up some car rims. Brazzle stated that Turner was driving Turner’s girlfriend’s green Buick. On the way to get the rims, Brazzle testified that Turner said that he knew the woman in the maroon Tahoe in front of them. Brazzle stated that he did not pay much attention because he was dozing in the passenger seat. Brazzle testified that when he woke up, he found that they were in a Popeye’s parking lot. He stated that Turner asked to borrow Brazzle’s coat, which he gave to him. Brazzle testified that he fell asleep again in the car and that when he woke up, Turner was gone. Brazzle stated that he waited for a while in the car and then went to look for Turner inside Popeye’s. He testified that he saw a car leaving the Popeye’s parking lot, which he recognized as the maroon Tahoe to which Turner had earlier referred. Brazzle testified that he waited a little longer and then followed the car.
¶ 48. He stated that he was eventually able to catch up with the maroon Tahoe. He said that Turner pulled over in the Tahoe, told Brazzle that he needed to return the green Buick to his girlfriend’s house, and asked Brazzle to drive the Tahoe instead of the Buick. Brazzle stated that Turner did not want his girlfriend to see Brazzle driving her car. Brazzle testified that, at this point, Turner also returned his black coat to him. Brazzle stated that he got into the Tahoe, which was empty except for him, and started following Turner in the green Buick. Brazzle testified that they were stopped at a railroad crossing when police officers suddenly pulled up. He stated that, when one of the police officers came up to the driver’s side window and pointed a gun in his face, he panicked and turned the car off the side of the road. He testified that the police officer was running in his direction with the gun pointed at him, so he got out of the Tahoe, ran to the woods, and removed his coat so that the police would not think he was hiding anything. He testified that Turner was still in the green Buick by the railroad crossing when he was arrested.
II.
¶ 49. On appeal, Brazzle argues that the trial court committed reversible error *821 by refusing to instruct the jury on the lesser offenses of accessory after the fact and receiving stolen property. He argues that these instructions are supported by the evidence and emphasizes that the jury could have believed or disbelieved some or all of the evidence presented. This is an accurate reading and an appropriate application of the relevant legal principles. Therefore, I agree.
¶ 50. As the majority correctly recognizes, this Court has held that “jury instructions are not given unless there is an evidentiary basis in the record for such.” Fairchild v. State, 459 So.2d 793, 800 (Miss.1984) (citations omitted); see also Gangl v. State, 539 So.2d 132, 136 (Miss.1989) (citations omitted); Maj. Op. ¶25. In other words, the jury instructions must be based on more than pure speculation. Fairchild, 459 So.2d at 801 (citations omitted).
¶ 51. Nevertheless, the evidence must be viewed in the light most favorable to the defendant. See, e.g., Fairchild, 459 So.2d at 801 (citation omitted); Lee v. State, 469 So.2d 1225, 1230 (Miss.1985) (“[T]he defendant must be given the benefit of all doubts about the evidence.”). Furthermore, all favorable inferences must be drawn in favor of the defendant. See, e.g., Jones v. State, 798 So.2d 1241, 1254 (Miss.2001) (citation omitted); Welch v. State, 566 So.2d 680, 684 (Miss.1990); Fairchild, 459 So.2d at 801. The majority acknowledges this by quoting this Court’s decision in Harper v. State, 478 So.2d 1017, 1021 (Miss.1985), in a footnote. Maj. Op. ¶ 25.
¶ 52. The majority rightly states that the defendant “may request an instruction regarding any offense carrying a lesser punishment if the lesser offense arises out of a nucleus of operative fact common with the factual scenario giving rise to the charge laid in the indictment.” Gangl, 539 So.2d at 136 (citation omitted); see also Mease v. State, 539 So.2d 1324, 1329 (Miss.1989) (citation omitted); Maj. Op. ¶ 24. The majority also correctly notes that the evidentiary standard for lesser-offense instructions and lesser-included-offense instructions is the same. See, e.g., Gangl, 539 So.2d at 136 (citation omitted); Maj. Op. ¶25.
¶ 53. However, the majority fails to mention that, even if there is sufficient evidence supporting the conviction on the principal charge, it may still constitute reversible error for the trial court to have refused the lesser-included-offense instruction. Fairchild, 459 So.2d at 800-01 (citation omitted); see also Taylor v. State, 577 So.2d 381, 383 (Miss.1991) (citations omitted); Mease, 539 So.2d at 1330 (citation omitted). Moreover, the majority fails to comprehend that this Court “do[es] not ask which way the evidence preponderates.” Fairchild, 459 So.2d at 800; see also Taylor, 577 So.2d at 383 (citation omitted). This Court has emphatically stated that “only where the evidence could only justify a conviction of the principal charge should a lesser included offense instruction be refused.” Fairchild, 459 So.2d at 800; see also Taylor, 577 So.2d at 383 (citations omitted). This Court has also held that “[a] lesser-included offense instruction must be granted where a reasonable juror could not on the evidence exclude the lesser-included offense beyond a reasonable doubt.” Jones, 798 So.2d at 1253 (citation omitted) (second emphasis added); see also Welch, 566 So.2d at 684 (citation omitted). Accordingly, this Court has made clear that “[t]he granting of instructions should err on the side of inclusion rather than exclusion.” Jones, 798 So.2d at 1254 (citation omitted).
¶ 54. The majority also appears oblivious of the fact that, when reviewing the record for evidentiary support for lesser- *822 offense instructions, this Court applies the basic and fundamental principle that the jury may consider any of the evidence presented at trial. See, e.g., Taylor, 577 So.2d at 384. Furthermore, the jury can believe or disbelieve some or all of the testimony. Warren v. State, 709 So.2d 415, 420 (Miss.1998) (citations omitted); Taylor, 577 So.2d at 384 (citation omitted). This Court has stated that the fact that the jury did not believe the defendant’s testimony is irrelevant when determining whether a lesser-included-offense instruction should have been given. Lee, 469 So.2d at 1231.
¶ 55. Taking' the evidence in the light most favorable to Brazzle, the record reflects that there was an evidentiary basis for the lesser-offense instructions he requested — contrary to the conclusion reached by the majority. See Fairchild, 459 So.2d at 801 (citations omitted); Lee, 469 So.2d at 1230 (citations omitted). The elements of accessory after the fact are: 1) concealing, receiving, relieving, aiding, or assisting a felon; 2) with the knowledge that such person had committed a felony; and 3) with the intent to enable the felon to escape or avoid arrest, trial, conviction, or punishment after the commission of the felony. Miss.Code Ann. § 97-1-5 (Rev. 2006); Gangl, 539 So.2d at 136. The evidence presented in this case could have supported a jury’s reasonable finding that Brazzle knowingly aided or assisted a felon with the intent to help the felon escape or avoid arrest, trial, conviction, or punishment.
¶ 56. Brazzle testified concerning Turner’s role in the events of January 22, 2007, and stated that Turner spotted a woman he knew driving the red Tahoe, that Brazzle fell asleep and ended up in a Popeye’s parking lot, and that Turner borrowed his jacket and left him in the car. Brazzle also testified that, after looking for Turner inside Popeye’s, he saw the red Tahoe leaving the parking lot and eventually decided to follow it. He testified that, when Turner finally pulled over, the woman was no longer in the Tahoe and that Turner asked Brazzle to drive it to Turner’s girlfriend’s house. Additional circumstantial evidence in support of Turner’s involvement was provided by Officer Cooper, who testified that, as a part of his investigation, he spoke with a man named Elliott Turner on the telephone, although the contents of that discussion are not revealed in the record. He also admitted that Officer Harris had observed a green Buick following the Tahoe before the driver of the Tahoe was apprehended, and that the presence of this vehicle had been noted in the police report. Brazzle testified that Turner had been driving a green Buick that day.
¶ 57. Officer Harris testified that Braz-zle was the individual driving the red Tahoe. In addition, Officer Cooper testified that Brazzle had admitted that he had been in the Tahoe. The prosecution also presented evidence suggesting that Braz-zle knew that the Tahoe he was driving had been stolen. According to Officer Harris, once he turned his lights on, the driver of the Tahoe (later identified as Brazzle) attempted to drive off the road, although the car became stuck in the muddy embankment. He then testified that the driver got out of the car and ran toward the nearby woods. “[I]t is a well-established principle that flight is admissible as evidence of consciousness of guilt,” subject to Mississippi Rule of Evidence 403. Fuselier v. State, 702 So.2d 388, 390 (Miss.1997) (citation omitted); see also Shaw v. State, 915 So.2d 442, 447 (Miss.2005) (citations omitted). This testimony clearly could support a jury’s reasonable finding that Brazzle knew the Tahoe had been stolen, thus satisfying the knowledge requirement for both accessory after the *823 fact and receiving stolen property, which will be discussed below. As stated above, the law only requires that there be an evidentiary basis for the instructions requested. See, e.g., Fairchild, 459 So.2d at 800 (citations omitted). The law does not state that the evidentiary basis for the instructions requested must be provided by the party requesting the instructions. Thus, the fact that Brazzle maintained that he had no knowledge of Turner committing a felony is completely irrelevant to the determination of whether a lesser-offense instruction for accessory after the fact should be given, since there is testimony suggesting otherwise.
¶ 58. Based on all this testimony, a jury could have reasonably concluded that Turner had committed a felony by stealing the Tahoe and driving it away from Popeye’s and that Brazzle had knowledge of this, despite his claim that he was unaware. A jury could have reasonably found that, by agreeing to switch cars with Turner and by attempting to evade the police, Brazzle knowingly aided or assisted a felon with the intent to help the felon escape or avoid arrest, trial, conviction, or punishment. Thus, a jury could reasonably find that Brazzle was guilty of accessory after the fact, but not guilty of carjacking or kidnapping. The lesser-offense instruction for accessory after the fact should have been given.
¶ 59. The elements of receiving stolen property are: 1) intentionally possessing, receiving, retaining, or disposing of stolen property; 2) with the knowledge or having reasonable grounds to believe that the property had been stolen. Miss.Code Ann. § 97-17-70 (Rev.2006). Based on the evidence reviewed above, a jury also could have reasonably found Brazzle guilty of receiving stolen property, but not guilty of carjacking and kidnapping. Officer Harris’ testimony established that Brazzle was driving the Tahoe and that he attempted to drive it through the embankment. Officer Cooper testified that Brazzle admitted to being in the Tahoe. The fact that Braz-zle was driving the Tahoe, which had been taken from Wright, would clearly demonstrate intentional possession of stolen property. And again, a jury could find incredible Brazzle’s explanation for how he ended up driving the Tahoe and reasonably conclude, based on the prosecution’s evidence, that, while Brazzle did not carjack or kidnap Wright, he did have actual knowledge or a reasonable belief that the Tahoe had been stolen. Thus, the lesser-offense instruction for receiving stolen property also should have been given.
¶ 60. In other words, if the jury — as it is entitled to do — believed Brazzle’s testimony concerning Turner and all of the State’s evidence, except for Wright’s identification of Brazzle, then Brazzle would only be guilty of accessory after the fact and receiving stolen property. This Court made a similar point in Warren v. State and concluded that the trial court committed reversible error by refusing to instruct the jury on a lesser-included offense. Warren, 709 So.2d at 420. In Warren, the defendant was indicted for voyeurism for allegedly peeping through the window of the victim’s house and harassing and threatening her and her children for two hours late one evening. Id. at 417. The victim testified that Warren told her to “go into her bedroom, pull back her curtains, take off her clothes, and ‘get off on herself.’ ” Id. Warren testified that he had never been to the victim’s house and that he had never harassed or threatened her for lewd or licentious purposes. Id. at 418.
¶ 61. Warren requested a jury instruction for trespassing, which the trial court denied. Id. at 418. On appeal, the State made an argument very similar to the one it makes in this case and maintained that *824 “there was no basis in the record for Warren to have claimed that he was merely guilty of trespassing in light of Warren’s claim that he was not even on the victim’s property.” Id. at 420. This Court stated:
Contrary to the State’s position, we conclude that it was reversible error to reject Warren’s request for a lesser included instruction on trespassing. Our law is that the burden of proof is upon the State to prove each element of the crime.... If it fails in so doing, the defendant is entitled to an acquittal on the offense charged even if the elements proven constitute guilt of a lesser offense .... A jury is entitled to believe or disbelieve witnesses in whole or in part.
Id. at 420 (citations omitted) (emphasis added). This Court concluded in Warren that
Warren is guilty of voyeurism only if the jury believed all of what James [i.e., the victim] had to say including her testimony suggesting Warren’s lewd purpose for being on her property and looking through her window. Likewise, he is guilty only of trespassing if the jury decided to believe everything that James stated except that portion of her testimony suggesting Warren’s lewd purpose. Thus, contrary to the State’s contention, there was evidence to support the lesser included instruction on trespassing, and the instruction should have been given.

Id.

¶ 62. As stated above, this Court has held that “only where the evidence could only justify a conviction of the principal charge should a lesser included offense instruction be refused.” Fairchild, 459 So.2d at 800; see also Taylor, 577 So.2d at 383 (citations omitted). Viewing the evidence presented at trial in the light most favorable to Brazzle, drawing all reasonable inferences in favor of Brazzle, and applying the legal framework constructed by this Court for reviewing requests for lesser-offense instructions, the jury instructions for accessory after the fact and receiving stolen property should have been given in this case.
¶ 63. Despite the precedent set in Warren and despite the applicable legal framework, the majority concludes that the trial court properly refused both instructions. The majority states:
Brazzle contends, however, that because a jury is entitled to believe or disbelieve witnesses in whole or in part, the jury could infer from the attendant circumstances in this case that there is sufficient evidence to support at least one of the proposed lesser-offense instructions. Specifically, Brazzle contends that, while Wright’s identification of Brazzle as the culprit supports an inference Brazzle actually carjacked and kidnapped Wright, the jury also was free to believe that she was mistaken about her identification and find that Brazzle had acquired the vehicle from Turner after the fact, as he claimed.
This argument fails.
Maj. Op. ¶¶ 26-27. The majority then proceeds to discuss Warren, but never clearly sets out its reasoning for reaching the conclusion that Brazzle’s argument fails. The majority fails to explain why it is that the jury was not free to believe that Wright “was mistaken about her identification” of Brazzle and why the jury was also not free to believe that “Brazzle had acquired the vehicle from Turner after the fact, as he claimed.” Maj. Op. ¶ 26.
¶ 64. Presumably, the majority reaches its conclusion because it finds that there was no evidentiary basis for the lesser-offense instructions — though it does not explicitly state this. The majority appears to be of the inflexible and misguided opin *825 ion that the evidence presented at trial could only lead the jury, as the factfinder, to one of two conclusions — either 1) that Brazzle is guilty of carjacking and kidnapping or 2) that Brazzle is not guilty of carjacking and kidnapping and also not guilty of accessory after the fact and receiving stolen property. See Maj. Op. ¶ 36. However, it has long been held that the jury sits as the factfinder in criminal trials, and it is well-established that the jury may consider any of the evidence presented and may believe or disbelieve some or all of the testimony. See, e.g., Grosedose v. State, 440 So.2d 297, 300-01 (Miss.1983) (citation omitted); Taylor, 577 So.2d at 384 (citation omitted). Furthermore, this Court has also explicitly stated that the fact that a particular jury did not believe the defendant’s testimony is irrelevant when determining whether a lesser-included-offense instruction should have been given. Lee, 469 So.2d at 1231; but see Maj. Op. ¶ 36. As stated above, a jury could have reasonably found Brazzle guilty of accessory after the fact and receiving stolen property (and not guilty of carjacking and kidnapping) based on the evidence presented at trial.
¶ 65. The majority declares that Warren is distinguishable merely because, according to the majority, the analysis in Warren only applies to lesser-included-offense instructions. However, the majority ignores the fact that the evidentiary standard for lesser-offense instructions and lesser-included-offense instructions is the same. See, e.g., Gangl, 539 So.2d at 136 (citation omitted). When deciding whether a lesser-included-offense instruction or a lesser-offense instruction should be given, a trial court asks the same question: whether there is an evidentiary basis in the record to support the instruction. See, e.g., Fairchild, 459 So.2d at 800 (citations omitted); Gangl, 539 So.2d at 136 (citation omitted). Since the same standard applies for giving lesser-included-offense instructions and lesser-offense instructions, and the same standard applies for reviewing trial courts’ decisions regarding lesser-included-offense instructions and lesser-offense instructions, the majority’s only ground for distinguishing Warren clearly has no basis in the law or in logic. Furthermore, although the majority claims that there is no evidence that Brazzle knew that a felony had been committed or that the Tahoe had been stolen, the evidence presented at trial, as discussed in detail above, clearly could have supported a jury’s reasonable finding that Brazzle did have knowledge of a felony and that the Tahoe had been stolen. Maj. Op. ¶ 29.
¶ 66. In closing, the majority states that “[a]ny reasonable doubt as to the State’s proof of Brazzle’s role in the two crimes for which he was indicted entitled Brazzle to nothing short of an absolute discharge.” Maj. Op. ¶ 36. It is true that, if the prosecution failed to prove beyond a reasonable doubt that Brazzle was guilty of carjacking and kidnapping, then the jury is duty-bound to find Brazzle not guilty of carjacking and kidnapping. However, this does not mean that the lesser-offense instructions requested by Brazzle were properly refused by the trial court. Brazzle was entitled by law, based on the testimony presented at trial, to the lesser-offense instructions that he requested. The jury should have been instructed on these lesser offenses, which, I note, would have done nothing to preclude the jury from acquitting Brazzle, in an “absolute discharge,” if it found that the prosecution did not meet its burden of proof. See Maj. Op. ¶ 36.
¶ 67. The trial court erred in denying Brazzle’s requests for the jury to be instructed on both accessory after the fact and receiving stolen property because, based on all the evidence presented, a jury
*826 could have reasonably found him guilty of the lesser offenses and not of carjacking and kidnapping. See, e.g., Jones, 798 So.2d at 1253 (citation omitted); Welch, 566 So.2d 684 (citation omitted). Today, the majority of this Court misconstrues and misapplies the relevant principles of law. In so doing, the majority sets a dangerous precedent and deals a substantial blow to the rights of criminal defendants in this state. Therefore, I respectfully dissent.
KITCHENS, J., JOINS THIS OPINION.