IRVING, J„
FOR THE COURT:
¶ 1. Leroy Coleman was convicted of burglary in the Circuit Court of Harrison County. Feeling aggrieved by the conviction, he appeals and assigns error to the trial court in three issues which we quote verbatim from his brief:
I. THE TRIAL COURT WAS IN ERROR WHEN IT REFUSED TO GRANT THE APPELLANT’S JURY INSTRUCTION D-l, AND SUBSTITUTED D-1A INSTEAD.
II. INSUFFICIENT EVIDENCE EXISTS FROM WHICH REASONABLE JURORS COULD HAVE FOUND THE APPELLANT GUILTY OF CHARGES OF BURGLARY OF AN AUTOMOBILE.
III. THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT’S MOTION FOR A DIRECTED VERDICT OR HIS MOTION FOR A NEW TRIAL.
¶2. Concluding that all of Coleman’s issues are without merit, we affirm.
FACTS
¶ 3. On May 31, 1999, David Churchill drove his vehicle to Dixie Glass Company in Harrison County, Mississippi to have a crack in his windshield repaired. His vehicle contained ten speakers of different brands, including Kenwood, JVC, and Bose. The JVC 6X9 speakers were custom installed.
¶ 4. Matthew Tomb worked at Dixie Glass, and after he got off that evening, he received a call to return to work. When he arrived back, he saw a person standing by the passenger side of .Churchill’s vehicle. As. Tomb pulled into the parking lot, the person jumped to the front of the vehicle and crouched down. Tomb then stopped his vehicle, and when he put his vehicle in reverse, the person ran around to the front of the building. Tomb backed up around the building and saw the person crouched behind an air-conditioning unit. *1172 At this time, Tomb was six feet away from the person. This person then jumped up and ran in the opposite direction away from Tomb. Tomb saw that this person was carrying a number of items with some wires hanging from them, but due to the darkness, he could not identify the items that the person was carrying. The person then ran into a field next to Dixie Glass, and Tomb watched him drop an item that later was discovered to be an automobile speaker.
¶ 5. Officer Michael Shaw, an officer with the Police Department of the City of Gulfport, received a call that night regarding a burglary at Dixie Glass. When Officer Shaw arrived at Dixie Glass, Tomb gave him a physical description of the person that Tomb had seen and chased a short time earlier. Tomb described the person as a dark-complexioned man with short-cropped hair, in his twenties or thirties, standing over six feet tall, and probably weighing 200 pounds.
¶ 6. While Officer Shaw was taking the report and processing the burglarized vehicle, four speakers were recovered from the field where Tomb saw the suspect enter. Officer Shaw did not lift any fingerprints from the recovered speakers, nor did he lift any fingerprints from the speakers that were still inside Churchill’s vehicle. Officer Shaw did attempt to lift fingerprints from the vehicle itself, but no prints could be recovered.
1f 7. On June 2, 1999, Travis Byrd, another officer with the Gulfport Police Department, saw a suspicious vehicle in the vicinity where the burglary of Churchill’s vehicle occurred. Several burglaries had occurred on a nearby construction site, and officers were on alert to watch the area closely. The driver of the vehicle was Leroy Coleman. Byrd stopped the vehicle and questioned Coleman because he had seen his vehicle leaving the area near the construction site. During the questioning, Officer Byrd learned that Coleman did not have a driver’s license and was wanted by the City of Gulfport for old fines. Officer Byrd then arrested Coleman and waited for the old fines officer to arrive. During this same time, Officer Byrd searched Coleman’s vehicle and its trunk. Coleman did not have a key to open the trunk, so Officer Byrd pulled the back seat up to gain access to the trunk. Officer Byrd found several small speakers inside the trunk.
¶ 8. Officer Shaw was called to Coleman’s vehicle after it had been stopped by Officer Byrd. Once on the scene, Officer Shaw recognized a speaker that closely resembled one of the speakers that had been in Churchill’s vehicle. Officer Shaw then went to Dixie Glass to confirm if the speakers were identical. The two speakers were of the same brand, in a box that was similar in design and carpeting, and had similar wiring. The serial numbers on the speaker were apart in sequence by nine numbers. The serial numbers were 15215B for one speaker and 15224B for the other speaker.
¶ 9. When questioned about the speakers, Coleman stated that they belonged to him and that he had had the speakers for approximately two months. Later, Churchill identified the speaker retrieved from Coleman’s vehicle as belonging to him.
¶ 10. Tomb was shown a photographic lineup, and he identified Coleman as the person that he had seen at Dixie Glass on the night of the burglary, although he was not one hundred percent positive of the identification.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Jury Instruction D-l

¶ 11. “In determining whether error lies in the granting or refusal of vari- *1173 eras instructions, the instructions given must be read as a whole. When so read, if the instructions fairly announce the law of the ease and create no injustice, no reversible error will be found.” Coleman v. State, 697 So.2d 777, 782 (Miss.1997).
¶ 12. Coleman submitted jury instruction D-l regarding identification. The State objected to the first paragraph of D-1, and the trial court sustained the State’s objection. In lieu of instruction D-l, the court allowed instruction D-1A which contained the same language as D-l but omitted the first paragraph of D-l. Coleman objected to the deletion of the first paragraph. Instruction D-l, as originally proposed by Coleman reads:

The Court instructs the jury that in reaching your verdict you are to consider all the evidence concerning the entire case and the circumstances surrounding the crime. One of the issues in this case is the identification of LEROY COLEMAN as the perpetrator of the crime. As with each element of the crime charged, the State has the burden of proving identity beyond a reasonable doubt, and before you may convict LEROY COLEMAN you must be satisfied beyond a reasonable doubt of the accuracy of the identification of LEROY COLEMAN. If, after considering all the evidence concerning the crime and the witness’ identification of LEROY COLEMAN as the person who committed the crime, you are not convinced beyond a reasonable doubt that he is the person who committed the crime, then you must find him not guilty.

Identification testimony is an expression of belief or impression by the witness. You must judge its value and reliability from the totality of the circumstances surrounding the crime and the subsequent identification. In appraising the identification testimony of a witness, you should consider the following:
1. Did the witness have an adequate opportunity to observe the offender?
2. Did the witness observe the offender with an adequate degree of attention?
3. Did the witness provide an accurate description of the offender after the crime?
4. How certain is the witness of the identification?
5. How much time passed between the crime and the identification?
If, after examining the testimony and the evidence, you have reasonable doubt that LEROY COLEMAN was the person who committed the crime, then you must find LEROY COLEMAN not guilty.
¶ 13. The italicized portion represents that portion which was objected to by the State and stricken by the trial judge. Coleman did object to the substitution of jury instruction D-l but assigns no error to the trial judge in striking a portion of it. Rather, Coleman emphasizes that the stricken portion is appropriate in Mississippi as a result of the Mississippi Supreme Court’s ruling in Davis v. State, 568 So.2d 277, 280 (Miss.1990). The italicized portion of the instruction does correctly state our case law and could have been granted. Id. Nonetheless, there was no reversible error committed in the trial judge’s decision to sustain the State’s objection. Coleman does not argue that he was harmed or prejudiced by the exclusion of the first paragraph of instruction D-l. He only contends that he was entitled to the inclusion of the paragraph. Following our standard of review, we find that the substituted jury instruction fairly announces the law and creates no injustice to Coleman.
*1174 ¶ 14. Furthermore, the trial court in this case properly instructed the jury through instruction S-1A and C-3 that the jury must acquit unless it found that the State proved beyond a reasonable doubt that Coleman broke and entered Churchill’s vehicle. When the trial court charges the jury on proving the elements beyond a reasonable doubt it has then placed the issue of possible misidentifícation before the jury. Smith v. State, 802 So.2d 82, 88(¶20) (Miss.2001). The supreme court has held that the jury considers the mis-identification issue even in the absence of a specific instruction to that effect. Id.
¶ 15. We find that Coleman’s argument is without merit and that the trial court did not commit reversible error in substituting jury instruction D-1A for instruction D-l.

2. The Sufficiency of the Evidence

¶ 16. In reviewing a claim of insufficient evidence, an appellate court must review all of the evidence in the light most consistent with the jury’s verdict. Id. at 85(¶ 10). The prosecution is given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Id. “If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable [persons] could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required.” Mangum v. State, 762 So.2d 337, 341(¶11) (Miss.2000).
¶ 17. Coleman propounds that it was error to use Tomb’s identification as direct evidence to show Coleman’s culpability. Coleman stresses particularly the fact that Tomb, when presented with a photographic line-up within a day or two after the burglary, was not one hundred percent positive that Coleman was the perpetrator, while at trial Tomb identified Coleman as being the person he observed at Churchill’s vehicle. Coleman attacks Tomb’s credibility by emphasizing that Tomb was not certain of his identification within days of the burglary, but one and one half years later Tomb was able to make an in-court identification with certainty. Coleman also attacks the amount of weight given to the fact that a speaker was found in his trunk and points to the fact that there were no prints lifted from the speakers taken from his vehicle or the speakers inside Churchill’s vehicle.[1] He contends that the speaker taken from his trunk was identified as Churchill’s primarily on appearance and similarity to the speakers stolen from Churchill’s vehicle.
¶ 18. The issues that Coleman presents go toward the weight and credibility of the evidence, and those are factual issues that are determinations for the jury. McClain v. State, 625 So.2d 774, 778 (Miss.1993). The jury is charged with the responsibility of resolving any inconsistencies in identification. Kimbrough v. State, 379 So.2d 934, 936 (Miss.1980). The jury found that Tomb’s identification of Coleman was credible and that the speaker found in Coleman’s trunk belonged to Churchill. Adherence to our standard of review leaves this Court no alternative but to leave those findings undisturbed.

3. The Denial of Motion for a New Trial

¶ 19. As distinguished from a directed verdict, a motion for new trial asks to vacate the judgment on grounds related to the weight, not the sufficiency of the evidence. Smith, 802 So.2d at 85—86(¶11). An appellate court’s standard of review for *1175 claims that a conviction is against the overwhelming weight of the evidence is as follows:
[This Court] must accept as true the evidence which supports the verdict and will reverse only when convinced that that circuit court has abused its discretion in failing to grant a new trial. A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice.
Mangum, 762 So.2d at 342 (¶¶ 12-13).
¶ 20. We have already discussed the evidence offered against Coleman. We will not repeat it here. It is adequate to say that the evidence was sufficiently strong to support the jury’s verdict. We see no basis to conclude that the trial court abused its discretion in not granting a new trial or that leaving the verdict intact will sanction an unconscionable injustice. Therefore, we find that this issue is without merit. Consequently, we affirm the trial court on this issue, as well as all others presented.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY OF THE CONVICTION OF BURGLARY AND SENTENCE OF SEVEN YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.

. Officer Shaw testified that when the speakers were recovered from the field on the night of the burglary, he did not take any prints off the speakers. He did attempt to take prints from Churchill’s vehicle but no prints were recovered.