IRVING, J.,
 

 for the Court.
 

 ¶ 1. James Buckley was convicted by a jury in the Neshoba County Circuit Court of sale of cocaine. Thereafter, he was sentenced by the court to twenty years in the. custody of the Mississippi Department of Corrections and was fined $5,000. Feeling aggrieved, Buckley appeals and asserts (1) that the court erred when it refused to grant his motion for a directed verdict, (2) that he received ineffective assistance of counsel when his attorney did not assert an insanity defense at trial, and (3) that he received ineffective assistance of counsel when his attorney failed to use a peremptory strike against a particular potential juror.
 

 ¶ 2. Finding no reversible error, we affirm the judgment of the circuit court.
 

 FACTS
 

 ¶ 3. On August 29, 2006, Buckley was indicted for sale of cocaine. On March 28, 2007, he filed a notice of intention to offer a defense of insanity, and on May 22, 2007, the court ordered a psychiatric examination. On June 25, 2007, Buckley filed a motion to allow medical treatment in which he asserted that he “had scheduled an appointment with the Neurology Department at University Medical Center in Jackson, Mississippi[,] on Friday, June 8, 2007, at 9:00 o’clock, a.m. ... [and] [t]hat [he] ha[d] been able to resehedule[] this appointment for Friday, July 6, 2007.... ” The motion also contained a request for transportation to his appointment. The court granted the motion.
 

 ¶ 4. Buckley’s trial was held on July 9, 2007. During its case-in-chief, the State called several witnesses. The first witness was Officer Neal Higgason, a former drug enforcement officer with the Philadelphia Police Department. Officer Higgason testified that on April 6, 2006, he and his partner, Officer Josh Burt, planned a buy of crack cocaine. He further testified that the plan consisted of using James McKin-ny, a confidential informant, to purchase the drugs.
 

 ¶ 5. According to Officer Higgason, he and Officer Burt met with McKinny around 1:40 p.m. on April 6, just outside the city limits of Philadelphia, Mississippi. Officer Higgason stated that he searched McKinny’s person while Officer Burt searched McKinny’s vehicle. He further stated that no illegal drugs, contraband, weapons, or paraphernalia were found in McKinny’s vehicle or on his person. Officer Higgason testified that he provided McKinny with a concealed video camera, twenty-five dollars, an evidence bag, and a body wire. Officer Higgason stated that the body wire allowed him and Officer Burt to hear what was going on around McKinny as it was happening. Officer Higgason explained that McKinny drove his own vehicle, a truck, to purchase crack cocaine.
 

 ¶ 6. Officer Higgason told the jury about what he and Officer Burt heard when McKinny arrived at his destination. Specifically, Officer Higgason testified that he heard McKinny get out of his vehicle, the sound of walking, gravel crunching, a knock on a door, and a voice say “come in.” He stated that he also heard McKinny tell someone that he needed twenty-five dollars’ worth and that the other person then said he would be right back. The next sound that Officer Higgason testified to hearing was that of McKinny returning to his vehicle. According to Officer Higga-son, McKinny immediately returned and gave Officer Higgason the evidence bag
 
 *834
 
 with a small white rock that appeared to be crack cocaine. Officer Higgason stated that he sealed the bag, marked it, and dated it, and that he then allowed McKin-ny to mark and date the bag. Officer Higgason further stated that he turned the evidence bag over to Officer Jimmy Reid, the chief investigator in charge of evidence.
 

 ¶ 7. The State’s next witness, McKinny, testified that on April 6, he and Officers Higgason and Burt met to prepare for the drug buy. McKinny stated that during the meeting, the officers searched him and gave him a video camera and sound recorder. According to McKinny, he drove his truck to a house in Philadelphia to purchase crack cocaine. McKinny identified the person who sold him the crack cocaine as Buckley. McKinny stated that he went inside Buckley’s home and that he asked for twenty-five dollars’ worth of crack cocaine. McKinny further stated that Buckley left the room they were in and came back with the crack cocaine. McKinny testified that, once he got the crack cocaine, he put it in the evidence bag and that from the time he left Buckley’s house to the time he got back to the meeting place he did nothing more to the bag. McKinny further testified that the plastic bag presented to him during trial was the evidence bag that he gave the officers on April 6. He also identified his handwriting on the bag. According to McKinny, when he got back to the meeting place, he turned the evidence bag over to Officers Higgason and Burt, and they took the video and sound equipment from him and searched him again.
 

 ¶8. The State’s next witness, Officer Reid, testified that he received the evidence bag from Officer Higgason on April 17. He explained that he stored the evidence bag in locked custody until he delivered it to the Mississippi Crime Laboratory on April 18. Officer Reid testified that after he received the evidence bag back from the crime lab, he stored it in the evidence vault and only retrieved it again to bring it to trial.
 

 ¶ 9. The State next called Brandy Goodman, a forensic scientist with the Mississippi Crime Laboratory, whose specialty is in the field of drug identification. Goodman testified that Officer Reid delivered the evidence bag to the crime lab. She further testified that after testing the sample from the evidence bag, the tests revealed that the sample was “cocaine based ... commonly referred to as crack cocaine.”
 

 ¶ 10. After Goodman testified, the State rested its case. Buckley called Officer Burt as his only witness.
 
 [1]
 
 Officer Burt testified that on April 6, he, Officer Higga-son, and McKinny met just prior to the planned buy. Officer Burt stated that he thoroughly searched McKinny’s truck and installed audio equipment inside of the truck.
 

 ¶ 11. Buckley rested his case and moved for a directed verdict on the ground that the State failed to meet its burden of proof. The circuit court overruled the motion. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 1. Sufficiency of the Evidence
 

 ¶ 12. In his first issue, Buckley argues that the circuit court erred in over-
 
 *835
 
 ruling his motion for a directed verdict. Specifically, Buckley argues that the State’s case was based solely on McKin-ny’s testimony and that McKinny’s testimony was unreliable and untrustworthy. Buckley asserts that the videotape shown during the trial was dubious and did not show a transfer of drugs in exchange for money.
 
 [2]
 

 ¶ 13. The standard of review for challenging the legal sufficiency of evidence in a criminal trial is well settled. In
 
 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss.2005), the Mississippi Supreme Court stated:
 

 [I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” However, this inquiry does not require a court to
 

 [“]ask itself whether
 
 it
 
 believes that the evidence at the trial established guilt beyond a reasonable doubt.[”] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 

 Jackson v. Virginia,
 
 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citations omitted) (emphasis in original). Should the facts and inferences considered in a challenge to the sufficiency of the evidence “point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty,” the proper remedy is for the appellate court to reverse and render.
 
 Edwards v. State,
 
 469 So.2d 68, 70 (Miss.1985) (citing
 
 May v. State,
 
 460 So.2d 778, 781 (Miss.1984));
 
 see also Dycus v. State,
 
 875 So.2d 140, 164 (Miss.2004). However, if a review of the evidence reveals that it is of such quality and weight that, “having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense,” the evidence will be deemed to have been sufficient.
 
 Edwards,
 
 469 So.2d at 70;
 
 see also Gibby v. State,
 
 744 So.2d 244, 245 (Miss.1999).
 

 ¶ 14. We find that there is sufficient evidence to sustain Buckley’s conviction. First, Officers Higgason and Burt testified that they searched McKinny’s person and vehicle before the buy occurred. They also testified that the video and sound equipment that they installed worked properly. McKinny testified that the videotape introduced into evidence at trial showed him and Officers Higgason and Burt at the pre-buy meeting and also showed Buckley at the location of the purchase. Officers Higgason and Burt testified that they heard, over the sound device installed on McKinny, the exchange between Buckley and McKinny that consummated the sell of the crack cocaine. McKinny testified that he immediately placed the drugs that he had purchased from Buckley in the evidence bag and that he did not tamper with the evidence bag in any way after he placed the drugs in it. It was also confirmed by the crime lab that
 
 *836
 
 the substance in the evidence bag was indeed crack cocaine.
 

 ¶ 15. It is also important to note that “[i]t is within the province of the jury to accept parts of the testimony of any witness, and the jury may give consideration to all inferences flowing from the testimony.”
 
 Mangum v. State,
 
 762 So.2d 337, 342(¶ 12) (Miss.2000) (citing
 
 Grooms v. State,
 
 357 So.2d 292 (Miss.1978)). The jurors heard from both sides of this case and returned a guilty verdict based on the testimonies they accepted as true. After viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Accordingly, this issue is without merit.
 

 2. Ineffective Assistance of Counsel
 

 ¶ 16. In
 
 Read v. State,
 
 430 So.2d 832, 841 (Miss.1983), the Mississippi Supreme Court set forth the procedure for an appellate court to follow when a defendant has raised the issue of ineffective assistance of counsel on direct appeal:
 

 The [cjourt should review the entire record on appeal. If ... [after] a review of the record, ... [the] [c]ourt can say that the defendant has been denied the effective assistance of counsel, the [c]ourt should also adjudge and reverse and remand for a new trial.... Assuming that the [c]ourt is unable to conclude from the record on appeal that defendant’s trial counsel was constitutionally ineffective, the [c]ourt should then proceed to decide the other issues in the case.... On the other hand, if the [c]ourt ... affirm[s], it should do so without prejudice to the defendant’s right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings.
 

 (Citations omitted). Alternatively, if the appellate court affirms, it may still “reach the merits of the ineffectiveness issue where ... the record affirmatively shows ineffectiveness of constitutional dimensions, or ... if the parties [have] stipulate[d] that the record is adequate and the [e]ourt determines that findings of fact by a trial judge[,] able to consider the demeanor of witnesses, ... are not needed.”
 
 Id.
 

 ¶ 17. Buckley argues that he received ineffective assistance of counsel for two reasons. First, Buckley argues that his trial attorney was ineffective because the attorney did not assert an insanity defense at trial after giving notice of his intention to present such. Second, Buckley argues that his trial attorney was ineffective because, during voir dire, he failed to use a peremptory strike against the wife of the Neshoba County Sheriff after previously challenging her for cause.
 

 ¶ 18. In regard to Buckley’s contention that his trial attorney failed to present an insanity defense, we note that Buckley has not presented any evidence to show that an insanity defense was warranted. In his brief, Buckley alleged that “a few days prior to trial ... [he] was under such a severe psychiatric and mental disability, that he was in urgent need of medical treatment before he would be competent to stand trial.” However, the record only reflects that Buckley asked the circuit court to allow him to go to a neurological appointment that he had missed and subsequently rescheduled. There is no evidence in the record to show that Buckley was insane at the time that he sold the cocaine to McKinny.
 

 ¶ 19. As for Buckley’s contention that his trial attorney erred in failing to use a peremptory strike during voir dire against the wife of the Neshoba County Sheriff, we note that “generally ... an
 
 *837
 
 attorney’s actions during voir dire ... [are] a matter of trial strategy, which ‘cannot be the basis for a claim of ineffective assistance of counsel unless counsel’s tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness.’ ”
 
 Harrell v. State,
 
 947 So.2d 309, 315(¶ 21) (Miss.2007) (quoting
 
 Burns v. State,
 
 813 So.2d 668, 675-76(¶22) (Miss.2001)). There is no evidence to suggest that Buckley’s attorney’s performance during voir dire so undermined the entire trial proceeding as to constitute an unfair trial. Further, Buckley offers no evidence to show that his attorney’s performance during voir dire was so inadequate that the outcome of the trial would not have been the same.
 

 ¶ 20. Nevertheless, notwithstanding, the lack of evidence in the record to support Buckley’s allegations regarding his attorney’s alleged ineffectiveness, we note that the parties have not stipulated that the record is adequate for us to make a determination with respect to the ineffective assistance of counsel claim. Therefore, pursuant to
 
 Read,
 
 we affirm Buckley’s conviction and sentence but decline to decide his claim of ineffective assistance of counsel. If he desires to do so, he may file a motion for post-conviction relief raising the issue of ineffective assistance of counsel.
 

 ¶ 21. THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A FINE OF $5,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . At this point, Buckley informed the circuit court that he had a motion for a directed verdict but that he would offer the motion at a more convenient time for the court. The court allowed Buckley to go forward with his case, and the motion was heard later in the proceedings.
 

 [2]
 

 . Neither party designated a copy of the videotape for the record on this appeal.