960 So.2d 583 (2007)
James Preston BAILEY, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-02109-COA.
Court of Appeals of Mississippi.
June 19, 2007.
*584 James Donald Evans, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. James Preston Bailey was found guilty of murder in the Circuit Court of Harrison County. He was sentenced to life in the custody of the Mississippi Department of Corrections as an habitual offender without the benefit of parole. From this conviction he appeals, asserting the following errors:

*585 I. WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A GUILTY VERDICT.
II. WHETHER THE TESTIMONY OF THARPE WAS INSUFFICIENT TO SUPPORT A GUILTY VERDICT.
III. WHETHER THE TRIAL COURT ERRED BY FAILING TO GRANT BAILEY'S MOTION FOR A DIRECTED VERDICT.
IV. WHETHER THE TRIAL COURT ERRED BY DENYING BAILEY'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL.
V. WHETHER THE TRIAL COURT ERRED BY DENYING THE TESTIMONY OF DEFENSE WITNESS CHAIX WHOSE TESTIMONY WAS ESSENTIAL TO BAILEY'S DEFENSE.
VI. WHETHER THE TRIAL COURT ERRED BY REFUSING JURY INSTRUCTION D-4.
¶ 2. Finding no error, we affirm.

STATEMENT OF THE FACTS
¶ 3. Eyewitness accounts differ as to the factual events which occurred on the night of September 20, 2002. However, testimony is uncontroverted that Kenneth Kirtland, Sr. (Kirtland) and his wife, Hope Kirtland (Hope), met with Bailey and his live-in girlfriend, Laura Tharpe (Tharpe), that night. The group went to Tharpe's and Bailey's rental home in Gulfport. Kirtland and Bailey entered into a heated discussion concerning the Confederate flag. Bailey went into the kitchen and returned with a butcher knife. He then proceeded to fatally stab Kirtland.
¶ 4. Hope contends that she and her husband met Bailey and Tharpe when the Kirtlands went to a Circle K convenience store on Pass Road in Gulfport to buy cigarettes. Upon arrival at the Circle K, Hope went into the store to purchase the cigarettes. When she returned, Hope stated that there was a black man and a white woman, whom she had never met before, in the van with her husband. Hope later identified the couple as Bailey and Tharpe. The Kirtlands drove Bailey and Tharpe home, which was located on an isolated road in an area known for drug activity.
¶ 5. The Kirtlands entered Bailey's and Tharpe's home, where the foursome began talking. There had been some conversation in the van between Kirtland and Bailey about a rebel flag and its placement in a flag display on the beach. Kirtland told Bailey and Tharpe that Hope was a racist, and Hope subsequently left the home, stating that her husband's remarks made her uneasy. Hope claims that she walked to her son-in-law's home where she spent the night.
¶ 6. Tharpe gave a slightly different version of events. She said that she and a girlfriend came home from a club and saw the Kirtlands' white van in the driveway. When Tharpe entered her home, she did not recognize the Kirtlands. Bailey and Kirtland were conversing and having a disagreement about the rebel flag. Tharpe said the only words she spoke to the Kirtlands were that she asked Hope where she worked and Hope said that she worked at the Waffle House. Tharpe told Hope that she also worked at a Waffle House. Hope verified that this bit of conversation took place between the two women at the house. Other than that, Tharpe said that she did not speak to the Kirtlands, that she was not introduced to them and did not know their names until later.
*586 ¶ 7. Tharpe testified that Kirtland and Bailey left with Hope in the van to take her home and that Bailey and Kirtland came back about forty five minutes later without Hope. Kirtland and Bailey continued drinking and talking. Tharpe said that Bailey got up, went into the kitchen, came back with a butcher knife and stabbed Kirtland in the right side of his chest. She said that Kirtland stood and asked Bailey, "Why did you do that to me?" She said Bailey told Kirtland to get out of his house. As Kirtland walked toward the door, he kept asking Bailey why he had stabbed him, so Bailey stabbed him again in the side and Tharpe said "his intestines and everything" came out. Kirtland didn't say anything else but staggered toward the front door and fell into a chair by the door.
¶ 8. Tharpe said she ran into a bedroom where Bailey's nephew, Leonard Buckley, was in the bathroom and she told him Bailey was stabbing a man and to stop him. She said Buckley went to the door and told his uncle, "Don't kill the man." Buckley, who was in jail on a drug charge at the time of the trial, testified and denied knowing anything about the murder. Kirtland's body was taken outside by Bailey and dropped by Tharpe's truck. Tharpe said that after about twenty minutes, Bailey came back in the house with blood all over his shirt and hands. She said she and Bailey went into the bathroom and she helped him wash the blood off of his body and change clothes. After cleaning up, Bailey and Tharpe went to a casino.
¶ 9. Tharpe testified that as they were leaving the house she saw Kirtland "lying down dead" beside her truck in the front yard. The couple stayed at the casino for approximately six hours. Upon leaving the casino, Bailey determined that he needed to dispose of the body so he organized a burial party. He picked up Donald Ray Osby and later Odell Evans joined the group. Osby testified that Bailey told him he wanted him to dig a hole for a dead dog. Osby admitted that he dug the hole, but he never saw a dead dog. Instead, he said he saw the heel of a human body which was wrapped in a sheet. The men dug a grave not far from the house while Tharpe kept a lookout. Tharpe said Bailey and Osby dug the grave and put Kirtland's body in. She said Kirtland was dressed only in shorts. After covering the grave, the men placed a piece of carpet and a pallet over it. Bailey instructed Osby and Evans to dispose of the van.
¶ 10. The day after she left Kirtland at Bailey's house, Hope filed a missing persons report on him with the Gulfport Police Department. She claimed that she was unable to assist police in locating the site of Bailey's house because she was taken there at night and was unfamiliar with the area. On September 25, 2002, Kirtland's van was found abandoned in Westside Park in Gulfport.
¶ 11. A year later, the Gulfport police received a break in the case from Officer Chris Wingfield of the Union Parish Sheriff's Office in North Louisiana. Wingfield had received an anonymous tip on the Crime Stoppers line, in which the caller said that Bailey had murdered Kirtland and buried him in Bailey's backyard. On October 24, 2003, Gulfport police went to Bailey's house where two police cadaver dogs separately signaled the presence of a body buried in the yard. The police recovered a knife with the handle missing and found the remains of a human body.
¶ 12. The body was later determined to be Kirtland's. An autopsy showed a cut wound on the upper edge of Kirtland's third rib going downward and to the left toward his heart, indicating that a sharp object had been jammed forcefully between *587 the second and third ribs. Another stab wound was observed in the upper back. The pathologist concluded that Kirtland was stabbed at least twice and maybe more with an object shaped like a butcher knife. The pathologist testified that Kirtland's cause of death was as the result of the two noted injuries, particularly the one in the front of the chest which caused damage to his left heart and lung and most likely was the fatal wound.
¶ 13. Hope identified Bailey in a photo lineup. At the time of his identification, Bailey was serving time for a marijuana charge. Tharpe was later detained and questioned and confessed to the events surrounding Kirtland's murder. Thereafter, Bailey and Tharpe were charged with murder. Odell Evans and Donald Ray Osby, Sr. were each charged as an accessory-after-the-fact. Tharpe pled guilty to the lesser charge of accessory-after-the-fact. After a jury trial, Bailey was convicted of murder and sentenced as an habitual offender to life in prison without parole.

LAW AND ANALYSIS
I. WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A GUILTY VERDICT.
¶ 14. Issues I, III and IV challenge the weight and sufficiency of the evidence and will be discussed together. Bailey argues that the guilty verdict is against the overwhelming weight of the evidence and that the evidence was insufficient to sustain the verdict.
A. Sufficiency of the Evidence
¶ 15. When a challenge is made to the verdict based upon the sufficiency of the evidence by a motion for a directed verdict or for a judgment notwithstanding the verdict, the inquiry is whether the evidence shows "beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed." Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). If the evidence fails to meet this test, then it is insufficient to support the conviction. Id. We are not to ask whether we believe the evidence at trial established guilt beyond a reasonable doubt. Rather, the relevant question is, when viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Dilworth v. State, 909 So.2d 731, 736(¶ 17) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 16. Pursuant to section 97-3-19(1)(a) of the Mississippi Code Annotated (Rev. 2006), the State was required to prove beyond a reasonable doubt that Bailey: (1) killed Kirtland; (2) without authority of law; and (3) with a deliberate design to bring about Kirtland's death. Bailey contends that there was no physical evidence to prove he murdered Kirtland. Considering the evidence and relevant testimony in the light most favorable to the State, we disagree.
¶ 17. Hope, Kirtland's wife, made an in-court identification of Bailey as the man with whom Kirtland had argued after giving Bailey and Tharpe a ride home on the night in question. She verified that all parties were drinking that night and that she left the home because Kirtland was "acting strange." The next day, Hope filed a missing person's report in which she reported that Kirtland was last seen in the company of Bailey and Tharpe. She also noted in the report that Kirtland was *588 wearing shorts with a Sherwin-Williams logo.
¶ 18. Detective Chayo Ing, of the Gulfport Police Department, testified that she assembled a photographic lineup containing a photo of Bailey and others and presented the lineup to Hope. Hope identified Bailey from the lineup as the man whom she saw in Kirtland's van and as the last person she saw with her husband. Detective Ing also obtained a statement from Tharpe. At trial, Ing stated that Tharpe did not immediately disclose any information about the killing, but eventually Tharpe told Ing that she was worried about what was going to happen to her if she disclosed information because she was present and "knew exactly what had occurred." Ing said that Tharpe then identified Bailey as the killer.
¶ 19. Louisiana Deputy Wingfield testified that he received an anonymous tip naming Bailey as the killer of an unknown white man in Gulfport, Mississippi, and that Bailey had buried this man in Bailey's backyard. Bailey claims that the testimony of Wingfield was hearsay and incompetent. However, we note that Bailey made no objection as to hearsay during Wingfield's testimony, and Bailey declined to question Wingfield on cross examination. An appellate court is under no obligation to review an assignment of error when no objection is made at trial. Hampton v. State, 910 So.2d 651, 656(¶ 18) (Miss.Ct.App.2005) (citing Caston v. State, 823 So.2d 473, 503 (¶ 102) (Miss.2002)). A specific and contemporaneous objection to the admission of the hearsay testimony must be made at the admission of the evidence in order for the admissibility to be considered on appeal. Id. Therefore, any objections Bailey had to Wingfield's testimony as hearsay are waived.
¶ 20. Detective Craig Peterson of the Gulfport Police Department testified that upon receiving the information from Wingfield regarding the anonymous tip, he obtained a search warrant and conducted a search of Bailey's premises. Peterson stated that dogs trained in locating cadavers searched the area and each separately designated the same spot which was later excavated and contained the remains of Kirtland.
¶ 21. Tharpe's landlord, John L. Box, testified that Tharpe rented from him the house where the body was found and that he was aware that Bailey lived there with Tharpe.
¶ 22. Detective George Chaix was one of the officers who assisted in exhuming Kirtland's body from Bailey's backyard. He testified that he saw a Sherwin-Williams logo on Kirtland's shorts and later confirmed that the missing person's report described a similar pair of shorts that Kirtland had been wearing on the night of his disappearance.
¶ 23. Donald Ray Osby's testimony further implicated Bailey. Osby said that Bailey picked him up and told him he wanted to dig a hole for a dog. Odell Evans was also present.[1] The men went to Bailey's house and dug a grave. Osby said he never saw a dog, but he did see "the heel of a human," with the rest of the body covered underneath a white sheet. Bailey argues that Osby did not identify Bailey as the killer. While this is true, Osby did provide details about Kirtland's grave and that he dug the grave per Bailey's instructions. Osby also verified *589 Tharpe's testimony that Bailey told Evans to dispose of Kirtland's van.
¶ 24. Dr. Paul McGarry, the forensic pathologist who performed Kirtland's autopsy, testified that Kirtland sustained a cut on the upper edge of the third rib going downward and to the left toward his heart. Dr. McGarry said the wound indicated that a sharp object had been jammed forcefully between the second and third ribs. He noted a second stab wound in the upper back which was also made by a sharp object. Dr. McGarry testified that Kirtland's cause of death was the result of the stab wounds. Bailey argues that Dr. McGarry's testimony refutes Tharpe's version of events in that Dr. McGarry testified that there was some skin which covered the abdomen and went around the side to the buttocks in which he detected no stab wounds. However, the substance of Tharpe's testimony was that Bailey stabbed Kirtland twice, once in the chest and once in his side. The fact that Tharpe said she saw "intestines and things come out" after the second knife blow does not take away from her testimony that Bailey stabbed Kirtland twice. Dr. McGarry said that he could not say exactly how many wounds there were because of the condition of the body, but that he did know there were at least two and that the one which was in the chest would have ultimately caused Kirtland's death.
¶ 25. Bailey only called his nephew, Leonard Buckley, whom Tharpe said was at the home when the killing occurred, as a witness. Buckley, who was in jail on a drug charge at the time of his testimony, said he knew nothing about the killing of Kirtland. He said he lived with Bailey and Tharpe at the time of the murder but denied any knowledge of the events surrounding that night.
¶ 26. When we consider the relevant testimony in a light most favorable to the State, we find that there was sufficient proof for a jury to find beyond a reasonable doubt that Bailey murdered Kirtland.
B. Weight of the Evidence
¶ 27. Bailey further argues that the weight of the evidence does not support a guilty verdict. "Matters regarding the weight and credibility of the evidence are to be resolved by the jury." McClain v. State, 625 So.2d 774, 778 (Miss.1993). Bailey filed a motion for a new trial, which was denied. A motion for a new trial is addressed to the discretion of the trial court. Bush, 895 So.2d at 844(¶ 18). The motion should be granted only if the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Id. On review of the denial of a motion for a new trial, we view the evidence in the light most favorable to the verdict, and will reverse only in exceptional cases where the evidence preponderated heavily against the verdict. Id.
¶ 28. Based on the evidence discussed above, we find that a reasonable jury could have found Bailey guilty of murder. Accordingly, we find this issue to be without merit.
II. WHETHER THE TESTIMONY OF THARPE WAS INSUFFICIENT TO SUPPORT A GUILTY VERDICT.
¶ 29. In this claim of error, Bailey contends that the only evidence to support the charge of murder against him was the testimony of his alleged accomplice, Tharpe. Bailey cites the general rule in Mississippi that the uncorroborated testimony of an accomplice may be sufficient to sustain a conviction. Doby v. State, 532 So.2d 584, 591 (Miss.1988). However, the general rule is inapplicable if the testimony is unreasonable, self-contradictory, or substantially impeached. Flanagan *590 v. State, 605 So.2d 753, 758 (Miss. 1992). Further, Bailey argues that our courts have held that the uncorroborated testimony of an accomplice "should be viewed with great caution and suspicion." Black v. State, 336 So.2d 1302, 1303 (Miss. 1976) (citing Hutchins v. State, 220 So.2d 276 (Miss.1969)).
¶ 30. We disagree with Bailey's conclusions applying the law, the first being that Tharpe was an accomplice to the murder of Kirtland. Our supreme court has described an accomplice as "a person who is implicated in the commission of the crime." Slaughter v. State, 815 So.2d 1122, 1134(¶ 66) (Miss.2002). In other words, if the evidence gives a reasonable inference that the person may have been a co-perpetrator or the sole perpetrator, then the person is an accomplice. Id. (quoting Williams v. State, 729 So.2d 1181, 1188(¶ 31) (Miss.1998)). On the other hand, an accessory-after-the-fact has been defined as "a person assisting one who has completed the commission of a felony to avoid being apprehended, arrested, convicted, etc." Chase v. State, 645 So.2d 829, 851 (Miss.1994).
¶ 31. No evidence was shown that Tharpe agreed with Bailey to murder Kirtland, that she planned the murder, that she helped Bailey stab Kirtland or that she encouraged Bailey at any time during the murder. The evidence does demonstrate how Tharpe helped Bailey clean up his bloody clothes, served as lookout during Kirtland's burial and did not notify authorities of the murder until police confronted her more than a year later with the evidence. It is clear that Tharpe's actions assisted Bailey after the murder and that her silence allowed Bailey to avoid being apprehended and punished. Thus, Tharpe's actions are considered those of an accessory-after-the-fact, the charge to which she pled guilty.
¶ 32. Assuming, arguendo, that Tharpe was an accomplice, we find that her testimony about the murder was corroborated. First, the forensic pathologist corroborated Tharpe's testimony of Kirtland having been stabbed. Second, Wingfield testified about information that he received through a tip identifying Bailey as the murderer and stating that Bailey had buried Kirtland in his backyard. Hope also verified Tharpe's testimony as to Bailey's and Tharpe's presence in the household on the night of the murder and also about the conversation between her and Tharpe about their mutual employment with the Waffle House. Hope further identified Bailey as the last person she saw with Kirtland and stated that they were quarreling when she left the home. Osby testified that Bailey asked him to dig a hole for a dog and that he never saw a dog but did see the heel of a human who was covered by a white sheet. Osby also testified that Evans picked him up after the digging in a white van. This corroborates Tharpe's testimony that Bailey told Evans to dispose of the van. Therefore, this issue is without merit.
V. WHETHER THE TRIAL COURT ERRED BY DENYING THE TESTIMONY OF DEFENSE WITNESS CHAIX WHOSE TESTIMONY WAS ESSENTIAL TO BAILEY'S DEFENSE.
¶ 33. Bailey argues that the trial court committed reversible error when it excluded testimony from Detective Chaix about statements Chaix took from two inmates regarding Tharpe's comments about the murder. Bailey sought to ask Chaix about his interview of the two inmates and maintains that Chaix's testimony would impeach the testimony of Tharpe regarding the discussion she had with the inmates regarding the cause of Kirtland's *591 death. The prosecution objected stating that such testimony would be hearsay on hearsay, "and it would basically be Detective Chaix testifying to his recollection of what someone told him that someone else told them." The court sustained the objection, ruling that the police officer was not the proper party to impeach Tharpe's testimony. Bailey did not call the inmates to testify.
¶ 34. The standard of review for a trial court's decision to admit or exclude evidence is abuse of discretion. Watts v. State, 936 So.2d 377, 382(¶ 16) (Miss.Ct. App.2006) (quoting Sturdivant v. State, 745 So.2d 240, 243(¶ 10) (Miss.1999)). "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. Rule 801(c). It follows then that hearsay is not admissible except in certain instances provided by law. M.R.E. Rule 802. We find that the trial court correctly refused to allow hearsay testimony from the officer regarding what the inmates told him that Tharpe said. Had Bailey wanted to inquire about these alleged statements, he should have called the inmates themselves to testify. This issue is without merit.
VI. WHETHER THE TRIAL COURT ERRED BY REFUSING JURY INSTRUCTION D-4.
¶ 35. Instruction D-4 was a cautionary accomplice instruction and reads as follows:
The Court instructs the Jury that the law looks with suspicion and distrust on the testimony of an alleged accomplice, and requires the jury to weigh same with great care and caution and suspicion. You should weigh the testimony from alleged accomplices, and passing on what weight, if any, you should give the testimony, you should weigh it with great care and caution and look upon it with distrust and suspicion.
¶ 36. The State objected to the instruction, pointing out that Tharpe pled guilty to accessory-after the-fact and, therefore, could not be considered an accomplice. The prosecutor said that an accomplice is someone who knowingly, voluntarily and with common intent with the principal offender unites in the commission of the crime. Tharpe did not fit this definition. The court refused the instruction finding that no witness fit the description of an accomplice.
¶ 37. As we have stated in Issue II, Tharpe was not an accomplice. In Smothers v. State, 756 So.2d 779, 787(¶ 23) (Miss. Ct.App.1999), we held that "[a] cautionary instruction about accomplice testimony is not required unless there is a reasonable inference that the witness is an accomplice." The rule for appellate review of the grant or denial of a cautionary instruction is abuse of discretion. Wheeler v. State, 560 So.2d 171, 172-75 (Miss.1990). To determine if the trial court erred, we should consider: (1) whether there was accomplice testimony, and (2) whether that testimony was corroborated. Smothers, 756 So.2d at 787(¶ 22). Tharpe was an accessory-after-the-fact, not an accomplice. She was the lookout during the burial of the victim, she helped Bailey clean his bloody body, she saw Kirtland lying dead by her truck and she kept quiet about the murder for more than a year until she was confronted by police. No accomplice instruction was needed. This issue is without merit. Accordingly, we affirm the trial court's conviction of Bailey for the murder of Kirtland.
¶ 38. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN *592 THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER WITHOUT PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Evans did not testify at trial and at the time of the writing of this opinion, has not been apprehended.