LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. A jury in the Jackson County Circuit Court convicted Terry Hye Jr. of capital murder. Hye was sentenced to life without parole in the custody of the Mississippi Department of Corrections. Hye’s post-trial motions were denied. Hye now appeals, asserting the following issues: (1) jury instruction 7 omitted an element of the crime charged; (2) the evidence was insufficient to prove he participated in the underlying crime; (3) the trial court erred in refusing an accessory-after-the-fact instruction; (4) the trial court erred in refusing an accomplice instruction; (5) the trial court erred in telling the jury panel that he was ineligible for the death penalty; (6) the indictment failed to properly charge capital murder; (7) his sentence was unconstitutional; and (8) cumulative error necessitates reversal.
FACTS
¶ 2. On October 23, 2008, Michael and Linda Porter stopped at a Conoco gas station in Moss Point, Mississippi, to ask for directions. Linda testified that Michael got out of the car and began to walk toward the service station. Linda noticed three young black males standing near her car. One of these men had a white towel draped over his head. As Michael returned to the car, two of the men attacked him. Michael was able to get into the car, shut the door, and put the car in gear. *821 Linda testified she saw the man with the white towel on his head walk toward the car, pull out a gun, and shoot Michael through the car window. Linda stated the car sped forward down the road. Linda tried to manage the car, eventually running the car into a ditch. Linda then sought help for Michael, who died from his injuries. Linda was unable to identify these three men.
¶ 8. The shooter was later identified as Darwin Wells, who was fifteen years old at the time of the murder. Wells was convicted of deliberate-design murder and sentenced to life imprisonment. Wells’s conviction was affirmed by this Court in Wells v. State, 78 So.3d 1203, 1204 (¶ 1) (Miss.Ct.App.2011). Three other men were questioned about Michael’s murder: Hye, Tevin Benjamin, and Alonzo Kelly. At the time of the murder, Hye was sixteen years old, Benjamin was fourteen years old, and Kelly was seventeen years old.
¶ 4. Kelly testified for the State at Hye’s trial. Kelly was initially charged with capital murder but ultimately pleaded guilty to accessory after the fact and served eleven months in jail. According to Kelly, earlier that day he, Hye, and Benjamin met Wells at a store, the Little Super. Benjamin and Wells stated they needed money, and Wells said he would “hit a lick.” Kelly stated this meant getting money by any means, legally or illegally. The group left the Little Super and walked to Kelly’s house. On the way, Wells got into a fight with another person in the street. The police responded, and all four men were searched. No weapons or drugs were found on the men. After this, Wells left the group for the afternoon.
¶ 5. The group met again a few hours later at the Little Super. Wells stated again that he needed to “hit a lick.” Hye indicated he needed to find someone to buy him cigarettes, so the group walked to the Conoco. On the way Wells showed his gun to Kelly. Kelly’s testimony indicates the whole group, including Hye, knew Wells was carrying a gun. Once the group neared the Conoco, Kelly decided to leave and turned around at a stop sign one block away from the Conoco. Kelly was concerned that “every time we go down there or something, we always get locked up for something.” As he was turning away, Kelly said he heard a gunshot and saw Wells, Benjamin, and Hye run past him. However, at one point, Kelly testified Hye and Benjamin were still standing in the road when Wells approached the Porters’ car.
¶ 6. Hye testified in his own defense and denied any involvement with Michael’s death. Hye stated he thought Wells wanted to sell drugs when he said “hit a lick.” Hye said he found someone to buy him cigarettes at the Conoco, but he never set foot on the property. According to Hye, after the Porters drove up, Wells ran from the side of the store but slipped and fell. Only then did Hye'notice Wells had a gun. Hye said he and Kelly were walking away when he heard a gunshot.
¶ 7. Benjamin and Wells were called to the stand but refused to testify, each invoking his right against self-incrimination. Zachary Kelly, Alonso Kelly’s cousin, was called to testify as to a conversation he had with Kelly. Zachary also invoked his right against self-incrimination.
DISCUSSION
I. JURY INSTRUCTION 7
¶ 8. In his first issue on appeal, Hye argues jury instruction 7 omitted the deadly-weapon element of the underlying crime of armed robbery as charged in the indictment. Hye admittedly failed to object, but contends the error cannot be harmless. The indictment charges that Hye did “wil- *822 fully, unlawfully, feloniously[,] and without the authority of law, with or without any design to effect death, kill and murder Michael David Porter, a human being, while engaged in commission of the crime and felony of [r]obbery, as defined by [Mississippi Code Annotated s]ection 97-3-79 [ (Rev.2006) ].” The State argues Hye was indicted for the underlying felony of robbery, not armed robbery. The State contends the reference to section 97-3-79 was a scrivener’s error. If so, then jury instruction 7, which tracks the robbery statute, Mississippi Code Annotated section 97-3-73 (Rev.2006), would be a correct statement of the law.
¶ 9. The real issue here appears to be whether the indictment was defective. We review the legal sufficiency of an indictment de novo. Tran v. State, 962 So.2d 1237, 1240 (¶ 12) (Miss.2007) (citation omitted). This Court has stated that “[t]he incorrect citation of a statute number does not alone render an indictment defective, but rather is ‘mere surplusage’ and not prejudicial to the defendant.” Brown v. State, 944 So.2d 103, 106 (¶ 8) (Miss.Ct.App.2006) (quoting Evans v. State, 916 So.2d 550, 552 (¶ 6) (Miss.Ct.App.2005)). “When an indictment provides the essential elements of the crime, the statutory subsection under which the defendant was charged need not be specified.” Evans, 916 So.2d at 552 (¶ 6) (citation omitted). The indictment charging Hye with capital murder does not provide the essential elements of the crime of robbery. The indictment only says “[r]ob-bery, as defined by [sjection 97-3-79.”
¶ 10. However, “[a] capital murder indictment based on an underlying felony, other than burglary, does not have to specifically set forth the elements of the underlying felony used to elevate the crime to capital murder.” Gray v. State, 728 So.2d 36, 71 (¶ 174) (Miss.1998) (citing State v. Berryhill, 703 So.2d 250, 256 (¶ 23) (Miss.1997); Mackbee v. State, 575 So.2d 16, 34-35 (Miss.1990)).
¶ 11. The indictment clearly put Hye on notice that he was being charged with capital murder based on the underlying felony of robbery. It is clear from the record that Hye was aware the underlying felony he was being charged with was robbery and not armed robbery. The record contains no references to armed robbery, even though Wells shot Michael. Both the State and Hye’s attorney repeatedly referred to robbery, not armed robbery, throughout the trial. We find that this issue is without merit.
¶ 12. We note that Hye also argues the trial court should have instructed the jury on the elements of attempted robbery since the jury instruction said Hye would be guilty if he “did take, steal[,] and carry away or attempt to take, steal[,] and carry away the personal property of Michael. ...” Hye admittedly failed to object and raises this issue for the first time on appeal; thus, this argument is waived. See Rubenstein v. State, 941 So.2d 735, 761 (¶ 90) (Miss.2006).
II. INSUFFICIENT EVIDENCE
¶ 13. In his next issue on appeal, Hye contends the evidence was insufficient to prove he committed armed robbery. Since Hye was indicted for the crime of robbery and not armed robbery, we decline to address this issue.
III. ACCESSORY-AFTER-THE-FACT JURY INSTRUCTION
¶ 14. Hye contends the trial court erred in refusing his accessory-after-the-fact jury instruction. The standard of review for the giving or refusal of jury instructions is abuse of discretion. Victory v. State, 83 So.3d 370, 373 (¶ 12) (Miss. *823 2012) (citation omitted). When reviewing the giving or refusal of jury instructions, we do not view the jury instructions in isolation, but instead we consider them as a whole. Rushing v. State, 911 So.2d 526, 537 (¶ 24) (Miss.2005) (citation omitted). Included in a defendant’s right to a fair trial is the right to a proper jury instruction on his theory of defense. Mitchell v. State, 90 So.3d 584, 589 (¶ 10) (Miss.2012) (citation omitted). The trial court may refuse the requested jury instruction if it (1) incorrectly states the law, (2) is covered elsewhere in the instructions, or (3) is without an evidentiary foundation. Id. “One cannot be both a principal in the crime and an accessory after the fact.” Hoops v. State, 681 So.2d 521, 534 (Miss.1996) (citations omitted).
¶ 15. Hye claims that he helped cover up the crime by denying his involvement and concocting false alibis for himself and the others. According to Mississippi Code Annotated section 97-1-5(1) (Supp. 2012), a person is guilty of accessory after the fact if he has “concealed, received, or relieved any felon, or ha[s] aided or assist ed any felon, knowing that the person had committed a felony, with intent to enable the felon to escape or to avoid arrest, trial, conviction[,] or punishment after the commission of the felony....” The trial court found that no evidence was presented to support Hye’s request. We agree. One of the elements of accessory after the fact is that “a completed felony has been committed.” Gangl v. State, 539 So.2d 132, 136 (Miss.1989). In Gangl, the Mississippi Supreme Court found it was error for the trial court to deny Gangl an accessory-after-the-fact instruction. Id. at 137. Gangl was found guilty of armed robbery, but there was some evidence presented to support Gangl’s claim he was an accessory after the fact because his involvement occurred after the felony had been committed. Id. at 136. In this case, the evidence showed that Hye’s involvement in the robbery began earlier in the day when the group decided to go “hit a lick” and headed to the gas station. Furthermore, Hye never presented this theory of defense to the jury. We find no merit to this issue.
IV. ACCOMPLICE INSTRUCTION
¶ 16. Hye next contends the trial court erred in refusing an accomplice instruction in regard to Kelly’s testimony. The decision to give an accomplice instruction is within the trial court’s discretion. Burke v. State, 576 So.2d 1239, 1242 (Miss.1991). Our supreme court has described an accomplice as “a person who is implicated in the commission of the crime.” Slaughter v. State, 815 So.2d 1122, 1134 (¶ 66) (Miss.2002) (citation omitted). “In other words, if the evidence gives a reasonable inference that the person may have been a co-perpetrator or the sole perpetrator, then the person is an accomplice.” Bailey v. State, 960 So.2d 583, 590 (¶30) (Miss.Ct.App.2007) (citations omitted). Kelly was convicted of accessory after the fact; thus, he was not an accomplice. See id. at 591 (¶ 37). We find no abuse of discretion by the trial court in refusing an accomplice instruction.
V. TRIAL COURT’S STATEMENT TO THE JURY PANEL
¶ 17. During voir dire of the jury panel, the trial court informed the panel that although Hye was charged with capital murder, “[t]he death penalty is not involved in this particular case[,] and the jury selected for this trial will determine guilt or innocence solely, and not be required to advise the Court or return a verdict or deliberate on the death penalty.” Hye contends this statement was reversible error.
*824 ¶ 18. Hye cites to Justice Diaz’s specially concurring opinion in Edmonds v. State, 955 So.2d 787, 808 (¶¶ 66-69) (Miss.2007), for support. In Edmonds, the trial court also informed the jury panel during voir dire that the case was not a death-penalty case. Id. Edmonds was a juvenile at the time he was accused of murder. Id. at 804 (¶ 56). Justice Diaz relied upon Warren v. State, 336 So.2d 726 (Miss.1976), and Smith v. State, 288 So.2d 720 (Miss.1974), in determining this particular statement by the trial court was error. Edmonds, 955 So.2d at 808 (¶ 68). However, in Warren, the trial court instructed the jury as to the specific sentences the defendant could receive for murder and manslaughter. Warren, 336 So.2d at 729. And in Smith, the trial court instructed the jury that the trial court would sentence the defendant to a certain number of years in the penitentiary if he was convicted of manslaughter. Smith, 288 So.2d at 722. We note that in Smith, the supreme court affirmed the conviction but set aside the sentence and remanded the case for resen-tencing based on the trial court’s statement to the jury. Id. These cases are not controlling with respect to the issue at hand. We find no error on the part of the trial court in informing the jury panel it would not be required to deliberate on the death penalty. This issue is without merit.
VI.CAPITAL-MURDER INDICTMENT
¶ 19. Hye argues the indictment was defective because the capital-murder statute, Mississippi Code Annotated section 97 — 3—19(2)(e) (Rev.2006), was cited in the heading of the indictment but not the body of the indictment. Mississippi Code Annotated section 99-17-20 (Rev.2007) requires capital-murder indictments to list the statute section and subsection in the indictment. Hye’s indictment lists the appropriate section and subsection in the heading and tracks the language of the statute in the body. Section 99-17-20 does not specify where the charged section and subsection number must appear in the indictment. Hye failed to object; thus, his argument is waived. See Rubenstein, 941 So.2d at 761 (¶ 90).
VII. ILLEGAL SENTENCE
¶ 20. Hye, who was sixteen years old at the time of the crime, contends his mandatory life sentence without parole is unconstitutional. The State concedes this, and we agree. The United States Supreme Court recently held that mandatory life imprisonment without parole for those who were juveniles at the time of their crimes violates the Eighth Amendment’s prohibition on cruel and unusual punishments. Miller v. Alabama, - U.S. -, -, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012). The Court in Miller suggested factors to consider when determining whether a juvenile should be sentenced to life or life without parole, including “chronological age and its hallmark features,” “family and home environment,” “circumstances of the homicide offense,” and “the possibility of rehabilitation.” Id. at 2468. Thus, we reverse and remand for resentencing in accordance with Miller.
VIII. CUMULATIVE ERROR
¶ 21. Hye contends the cumulative errors necessitate reversal. Athough we reverse on a sentencing issue, we find no reversible error in any of Hye’s other issues; thus, this issue is without merit.
¶ 22. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF CAPITAL MURDER IS AFFIRMED. THE SENTENCE OF LIFE WITHOUT PAROLE IN THE CUSTODY OF THE MISSIS *825 SIPPI DEPARTMENT OF CORRECTIONS IS VACATED, AND THIS CASE IS REMANDED TO THE JACKSON COUNTY CIRCUIT COURT FOR RE-SENTENCING. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J„ DISSENTS WITH SEPARATE WRITTEN OPINION.