# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-01245-COA

**JEFFERY LECOMPTE**                                           **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/16/2022 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/07/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND SMITH, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. Jeffery LeCompte appeals from his conviction in the Circuit Court of Lincoln County, Mississippi for exploitation of a vulnerable adult in violation of Mississippi Code Annotated section 43-47-19(2)(b) (Rev. 2015).[1] After a jury trial on July 11, 2021, LeCompte was

---

[1] Mississippi Code Annotated section 43-47-19(2)(b) states:

Any person who willfully exploits a vulnerable person, where the value of the exploitation is less than Two Hundred Fifty Dollars ($250.00), shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine not to exceed Five Thousand Dollars ($5,000.00) or by imprisonment not to exceed one (1) year in the county jail, or by both such fine and imprisonment; where the value of the exploitation is Two Hundred Fifty Dollars ($250.00) or more, the person who exploits a vulnerable person shall be guilty of a

convicted for writing checks belonging to Lynn Richardson, who was seventy-eight years old, to access money in her checking account. The circuit court sentenced LeCompte to ten years in the custody of the Mississippi Department of Corrections, with two years suspended and eight years to serve, followed by two years of post-release supervision. LeCompte was also ordered to pay a $3,000 fine and restitution to Trustmark Bank in the amount of $2,350. LeCompte appeals on the ground that the trial court erred by refusing to grant an accomplice jury instruction. For the reasons stated below, we affirm the conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.    Richardson hired Erica Etheridge to clean her house. Each time Etheridge cleaned, she brought LeCompte, her live-in partner, with her. At some point in January 2019, somebody began writing checks from Richardson's account, and Richardson was informed by her bank of the suspicious activity. Richardson filed a complaint with the Lincoln County Sheriff's Department in April 2019. In her complaint, Richardson accused LeCompte and his friend Samantha Lemieux of forging the checks. Samantha was originally charged with felony forgery. After being arrested and questioned regarding two forged checks made out to her, Samantha admitted to police that she cashed the two checks. However, she claimed that LeCompte had misrepresented to her that Etheridge had been given the checks by Richardson, and LeCompte was trying to cash them for Etheridge. LeCompte said he could not cash the checks himself because he did not have an ID. Based on Samantha's statement, the charges against her were reduced to misdemeanor uttering and forgery, to which

_____

felony and, upon conviction thereof, shall be punished by imprisonment in the custody of the Department of Corrections for not more than ten (10) years.

2

Samantha pled guilty.

¶3.     Trial commenced on July 11, 2021.  The State called Detective Leslie Falvey to testify.  While interviewing LeCompte, Detective Falvey asked him to write his name in both cursive and print.  These handwriting samples were entered into evidence.  Detective Falvey also testified about two checks that were cashed from Richardson's account that had LeCompte's fingerprints on them.

¶4.     The State also called Richardson to testify.  Richardson said that she hired Etheridge to clean her house.  She said that when Etheridge cleaned, LeCompte always came with her. Richardson testified regarding twenty-two checks, written over the course of four months, that the State entered into evidence.  Of all the checks presented, Richardson recalled writing only two, which were made out to Etheridge.  She claimed that all the other checks (the eighteen checks made out to LeCompte and the two made out to Samantha) had been forged. Richardson said that she never left the payee line blank.  She also confirmed that she signed and dated checks in cursive, rather than in printed fashion like the forged checks.  All the checks made out to LeCompte were in print, and the two made out to Etheridge were written in cursive.  She also said she never wrote out four digits for the year, as some of the forged checks did.  Lastly, Richardson confirmed that she did not give LeCompte permission to cash the checks.

¶5.     The State also called Samantha to testify against LeCompte.  Samantha said that she cashed checks from Richardson's account without Richardson's permission.  However, she said that LeCompte had given her the checks to cash for him because he said he did not have

an ID. Samantha said that LeCompte drove her and Christian Newman, a friend of hers, to a place called Kumar's 84 in Brookhaven and waited in the car while Samantha and Newman went inside to cash a $300 check. Samantha gave a second check for $500, also made out to her, to an individual named Stan Winborne.[2]

¶6. Lastly, the State called Christian Newman to testify. He said that he was present when LeCompte gave Samantha the $300 check to cash. Newman said that when LeCompte and Samantha discussed cashing the check, LeCompte had a checkbook with him. When Samantha questioned whether the checks were okay for her to cash, LeCompte said that the checkbook and checks belonged to his partner, Etheridge, and that nothing bad would happen if Samantha cashed it. Newman stated that Samantha agreed to cash the checks after LeCompte assured her that he would not let anything bad happen to her.

¶7. After the State rested, LeCompte moved for a directed verdict on the ground that the State failed to meet its burden of proving each element of the crime charged. The court denied the directed verdict motion. The defense presented no evidence and rested. The court then held a jury-instruction conference. During the conference, LeCompte proposed instruction D-9, which would have instructed the jury as follows:

> During the course of her testimony in this trial, the witness Samantha claimed to have participated with Jeffery LeCompte in the in the [sic] crime with which Mr. LeCompte is charged. Samantha is an admitted accomplice, and, as such, the jury should consider her testimony with great caution and suspicion. The jury is the sole judge of the credibility and the believability of all the witnesses, and it is for the jury to decide how much weight and worth, if any, to give the testimony of the witnesses, including Samantha. As you consider Samantha's

---

[2] The record does not reflect any information regarding who Stan Winborne was, and why Samantha gave him the $500 check.

testimony, you may accept such portions, if any, that you deem credible, and reject such portions, if any, that you do not deem worthy of belief.

The trial court refused the instruction on the ground that Samantha did not admit to being an accomplice but, rather,

> [t]he only testimony we've heard was Mr[s]. Samantha and Mr. Newman which stated that at the time she admittedly cashed the check she had no idea that – that it was represented to her that the checks belonged to Mr. LeCompte's wife[, Etheridge,] and she had no idea that she was doing anything nefarious.

LeCompte objected to the court's refusal of the jury instruction. The judge then charged the jury with the approved instructions.

¶8. After deliberating, the jury returned a verdict of guilty of exploitation of a vulnerable adult. On September 29, 2022, after a sentencing hearing, the court entered an order sentencing LeCompte to ten years in custody, with two years suspended and eight years to serve, and two years of post-release supervision, as well as a fine of $3,000 and restitution in the amount of $2,350 to be paid to Trustmark Bank.

¶9. LeCompte filed a motion for judgment notwithstanding the verdict or a new trial on October 5, 2022, arguing that the court should not have allowed the canceled checks into evidence because they were hearsay; that the verdict was contrary to the law and the weight of the evidence; that the court erred by denying the directed verdict motion and a peremptory instruction; that discovery violations occurred; and that the court erred by refusing the defense's accomplice jury instruction D-9. On December 14, 2022, the court denied the motion for a JNOV or new trial.

¶10. On December 5, 2022, LeCompte filed his notice of appeal. On appeal, LeCompte

5

argues the single issue regarding the court's refusal of the jury instruction D-9. LeCompte claims that he was entitled to a cautionary instruction on accomplice testimony because Samantha's testimony showed that she was an accomplice, and the only corroborating testimony in the record is that of Newman, who LeCompte argues was also an accomplice.

## STANDARD OF REVIEW

¶11. Our Court reviews a trial court's decision to refuse jury instructions under an abuse-of-discretion standard. *Newell v. State*, 49 So. 3d 66, 71 (¶9) (Miss. 2010). Instructions should be read as a whole, and if they fairly announce the law of the case, there is no error. *Id*. at 73-74 (¶20). A defendant has a right to have jury instructions that present his theory of the case. *Id*. at 74 (¶20). However, a trial court "may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Id*.

## DISCUSSION

¶12. An accomplice instruction should be given when "the accomplice's testimony is the sole basis for the conviction, and the defendant's guilt is not clearly proven." *Williams v. State*, 32 So. 3d 486, 490 (¶12) (Miss. 2010) (citing *Wheeler v. State*, 560 So. 2d 171, 173 (Miss. 1990)). Before giving an accomplice instruction, the trial court must consider (1) whether the witness was in fact an accomplice, and (2) whether the accomplice's testimony was corroborated. *Id*. Furthermore, an accomplice's testimony cannot be considered corroborated when the only corroboration comes from another accomplice's testimony. *Id*.

> In determining whether a cautionary jury instruction is required, the testimony
> that must be corroborated is the testimony tying the defendant on trial to the

6

crime, and it is irrelevant whether other portions of the accomplice's testimony are corroborated.

*Id*. at 491 (¶19) (citing *Holmes v. State*, 481 So. 2d 319, 322 (Miss. 1985)). For example, in *Holmes*, the defendant's accomplice, Thompson, testified that he and Holmes had burglarized a store. *Id*. at 320. A footprint at the scene matched Thompson's foot, but the supreme court held that this evidence merely corroborated that Thompson had committed the crime. *Id*. at 322. The supreme court reversed Holmes' conviction, stating that "without the testimony of Everette Thompson, there is nothing to indicate that the defendant was in any way involved in the burglary of the Co-op." *Id*. Based on *Holmes*, we reiterate that to be entitled to an accomplice instruction, the defendant must show that the State's case relies solely on accomplice testimony and that the State presented no other evidence to support the defendant's guilt.

¶13. LeCompte argues that because Samantha pled guilty to two misdemeanor counts of uttering and forgery for cashing the checks, she is an accomplice. LeCompte argues that satisfies the first requirement for accomplice instructions under *Williams*. LeCompte further argues that Samantha's testimony was not corroborated by anything other than the testimony of Newman. LeCompte claims that because Newman was present when Samantha agreed to cash the checks for LeCompte and that because he was aware that there could be some criminal element to the act, Newman was an accomplice as well. Based on *Williams*, LeCompte argues that Newman, as an accomplice, could not corroborate Samantha's testimony. Thus, the second requirement for an accomplice instruction (that the accomplice's testimony is uncorroborated) is also met. This argument is flawed for numerous reasons.

*I.     Whether Samantha and Newman were accomplices.*

¶14.    An accomplice is "a person who is implicated in the commission of the crime." *Hye v. State*, 162 So. 3d 818, 823 (¶16) (Miss. Ct. App. 2013) (quoting *Slaughter v. State*, 815 So. 2d 1122, 1134 (¶66) (Miss. 2002)).  If the evidence gives a reasonable inference that the person may have been a co-perpetrator or the sole perpetrator, then that person is an accomplice.  *Hye*, 162 So. 3d at 823 (¶16) (citing *Bailey v. State*, 960 So. 2d 583, 590 (¶30) (Miss. Ct. App. 2007)).

¶15.    Based on the above definition, it appears evident that Samantha could be considered an accomplice.  Samantha was implicated as being centrally involved in the commission of the crime and could have been reasonably considered a co-perpetrator based on the facts that she actually cashed the checks and pled guilty to misdemeanor counts of uttering and forgery.

¶16.    However, for the same reason that Samantha could be considered an accomplice, Newman is very clearly not an accomplice.  Newman was present during the cashing of the forged check and testified that there was some concern on Samantha's part about the authenticity of the check.  However, Newman never testified that he was aware that the check was a bad check, never actually cashed a forged check, and never appeared to have benefitted or taken any part in the commission of the crime aside from merely being in the room when the check was cashed.  This does not meet the requirements of *Slaughter* or *Hye* for classifying a witness as an accomplice.  Because Newman was very clearly not an accomplice, his testimony corroborated Samantha's testimony.

*II.     Whether other corroborating evidence supported the conviction.*

8

¶17. Furthermore, there was other substantial evidence presented by the State that supported LeCompte's guilt. First, there were the checks themselves that Richardson testified were forged. Richardson testified that on the checks she wrote, she did not use four numbers for the date, and she never wrote in print. Next, LeCompte provided handwriting samples to Detective Falvey, which the jury was able to compare to the handwriting on the forged checks. Also, Detective Falvey testified that LeCompte's fingerprints were found on at least two of the checks made out to LeCompte, both of which Richardson testified were forgeries. Moreover, Newman testified that he saw LeCompte with Richardson's checkbook. Lastly, Richardson's and Etheridge's testimony confirmed that LeCompte accompanied Etheridge to Richardson's home where he had ample opportunity to steal the checkbook.

¶18. Based on *Williams* and *Holmes*, an accomplice instruction is only warranted where the accomplice testimony is uncorroborated, and the accomplice's testimony is the only evidence presented that supports the defendant's guilt. *Williams*, 32 So. 3d at 492 (¶20). Because Newman was not an accomplice, his testimony corroborated Samantha's testimony. Further, Samantha's accomplice testimony was not the only evidence presented that supported the State's case. Based on this, the trial court did not err in refusing LeCompte's accomplice instruction D-9.

## CONCLUSION

¶19. Based on the above reasoning, the trial court did not abuse its discretion in refusing to give LeCompte's accomplice instruction. Accordingly, we affirm the conviction and sentence.

9

¶20.	**AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**